So Ordered.

Dated: September 21, 2021



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Antonio Terrell and
Angel Marie Terrell,

Debtors.

Case No. 18-28674-gmh
Chapter 13

**DECISION AND ORDER**

Nearly two years after the court confirmed the debt-adjustment plan in this case, the debtors objected to a claim filed by the State of Wisconsin Department of Children and Families. The claim objection requests a determination that the Department's claim is not entitled to priority under 11 U.S.C. §507(a)(1)(B). ECF No. 75. The Department responds that the objection comes too late because the confirmed plan provides for its claim as entitled to priority under §507(a)(1)(B). For the following reasons, the objection is sustained, and the Department's claim is declared to be not entitled to priority.

I

The court confirmed debtors Antonio and Angel Terrell's chapter 13 plan in February 2019. ECF Nos. 2, 42 & 45. The confirmed plan provided that the debtors

would pay the trustee an amount approximately equal to their projected disposable income for 60 months. These payments about matched the amount the plan required the trustee to pay for administrative expenses, to creditors who held claims secured by the debtors' vehicles, and on priority tax claims. If any funds remained after paying these claims, the plan provided for payment of the Department's "allowed priority claim[ ] . . . based on a domestic support obligation . . . owed or assigned to a governmental unit as provided by 11 U.S.C. §507(a)(1)(B)". ECF No. 2, at 5. The plan further states that the Department "will be paid less than the full amount of the claim under 11 U.S.C. §1322(a)(4)", a statutory provision that authorizes a chapter 13 plan to pay less than the full amount of a claim entitled to priority under §507(a)(1)(B) if the plan requires the debtor to pay all projected disposable income into the plan for 5 years.

The debtors' inclusion of the Department's claim in the plan section providing for §507(a)(1)(B) claims accords with the Department's proof of claim, which states that the debtors owe it nearly $30 thousand in "[p]ublic assistance overpayments for Child Care and FoodShare" and that the claim is entitled to priority under §507(a)(1)(B) in the full amount. Claim No. 32, at 2–3.

After the court confirmed the plan the Seventh Circuit held in *In re Dennis* that a claim for a debt arising from overpayment of public assistance benefits is *not* entitled to priority under §507(a)(1)(B). 927 F.3d 1015 (7th Cir. 2019). Seeing in *Dennis* a basis to contest the Department's assertion of priority as a precursor to modifying the plan to reduce the time over which they must make monthly plan payments, the debtors objected to the Department's claim.

II

A

Two potentially dispositive issues can be quickly dispensed with (because they are not, or cannot be, seriously contested): First, there is no need to consider in detail whether the Department's claim is entitled to priority under §507. The Department does

not challenge the debtors' assertion that under *Dennis* its claim—for "a debt owed to the government for the overpayment of benefits"—is not entitled to priority under §507(a)(1)(B). See 927 F.3d at 1017–18. And the Department does not argue that its claim is otherwise entitled to priority under §507.

Second, no applicable statute or rule sets a deadline on requests to determine the amount of a claim entitled to priority under §507. The Department also does not contest this. Its position is, instead, that plan confirmation (either generally or due to the specific provisions of the plan in this case) established that its claim *is* entitled to priority under §507(a)(1)(B), and even if that was an error, the debtors cannot now "seek to reclassify the . . . claim from priority to general unsecured." ECF No. 77, at 5.

B

This brings us to the crux of the parties' dispute: Does the debtors' claim objection come too late because the confirmed plan provides for the Department's claim as one entitled to priority under §507(a)(1)(B)?

1

Section 1327(a) of the Bankruptcy Code states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a). The debtors' confirmed plan lists the Department's claim in section 4.5, which states in relevant part as follows:

> The allowed priority claims listed below are based on a domestic support obligation that is owed or assigned to a governmental unit as provided by 11 U.S.C. § 507(a)(1)(B) and will be paid less than the full amount of the claim under 11 U.S.C. § 1322(a)(4). If the *Available funds to creditors in Parts 3 and 4* box is selected, then there should be no distribution to nonpriority unsecured creditors in Part 5 until or unless the § 507(a)(1)(B) claim is paid in full. *This plan provision requires that payments in § 2.1 be for a term of 60 months*; see 11 U.S.C. § 1322(a)(4).

| Name of Creditor | Amount of claim to be paid |
|---|---|
| | ☑ Available funds after creditors in Parts 3 and 4 are paid |
| Department of Children and Families | ☐ $ ___ |
| | ☐ Percent of claim ___% |

ECF No. 2, at 5.

The plan thus provides for the Department's claim as one entitled to priority under §507(a)(1)(B). This provision governs the debtors' and the Department's rights and obligations under the confirmed plan—that's the effect of §1327(a)—and any alteration of those rights and obligations requires a request to modify the confirmed plan under 11 U.S.C. §1329. Section 1329 authorizes the debtor, as well as the trustee and any holder of an allowed unsecured claim, to modify a plan after it is confirmed but before the completion of plan payments to "reduce the amount of payments on claims of a particular class provided for by the plan" or "reduce the time for such payments", among other things. §1329(a)(1) & (2). The debtors have moved under §1329 to modify the plan to shorten the plan term. The trustee (but not the Department) objected that the modification is impermissible because the plan as modified would not pay the Department's §507(a)(1)(B) claim in full *or* require the debtors to pay their disposable income for a full 5 years. See §1329(b)(1) (applying the plan-composition requirements of §1322(a) & (b) and the plan-confirmation requirements of 11 U.S.C. §1325(a) to requests to modify a confirmed plan). In response, the debtors objected to the Department's claim seeking a determination that the Department's claim is not entitled to priority under §507(a)(1)(B).

2

The Department's principal brief argues that a confirmed plan has preclusive effect that goes beyond the plan's operation to foreclose any determination that is

inconsistent with the plan's terms:

> "[O]nce a bankruptcy plan is confirmed, its terms are not subject to collateral attack." *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) (debtor barred from challenging proof of claim after confirmation) . . . . Allowing a debtor to later challenge an issue that the debtor could have raised at the confirmation hearing "destroy[s] the finality that bankruptcy confirmation is intended to provide." [*Id.*] at 895.

ECF No. 77, at 2–3. The Department's reply brief continues this theme:

> "It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan." *In re Harvey*, 213 F.3d [318, ]321 [(7th Cir. 2000)] (citing to section 1327 and other authorities). When a debtor expressly provides for a claim in the plan, as the Debtors did here with DCF's priority claim, section 1327 effectively allows the claim upon confirmation and bars any subsequent attempt to change the terms.

ECF No. 85, at 4–5. The Department reads too much into *Adair* and *Harvey*.

Orders confirming chapter 13 plans are unquestionably appealable "final orders" for purposes of 28 U.S.C. §158(a)(1). See *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1691–94 (2015). Unlike final orders in ordinary civil litigation, however, orders confirming chapter 13 plans do not bring an end to all proceedings in the bankruptcy case. "A bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Id*. at 1692 (quoting 1 *Collier on Bankruptcy* ¶5.08[1][b] (16th ed.)). Confirmation is one such individual controversy—one that typically precedes many others.

Section 1324 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure call for confirmation of the plan in the early stages of a chapter 13 case. Under §1324(b) and Rule 2003(a) the confirmation hearing is contemplated to occur as early as 41 days after the date on which the debtor files the bankruptcy case. See 11 U.S.C. §301(b) ("The commencement of a voluntary case under a chapter of [the Bankruptcy Code] constitutes an order for relief under such chapter."); Fed. R. Bankr.

P. 2003(a) ("In a chapter 13 . . . case, the United States trustee shall call a meeting of creditors to be held no fewer than 21 days and no more than 50 days after the order for relief."); 11 U.S.C. §1324(b) ("The hearing on confirmation of the plan may be held not earlier than 20 days and not later than 45 days after the date of the meeting of creditors . . . ."); see also *id.* §303(a) ("An *involuntary* case may be commenced only under chapter 7 or 11 of this title . . . ." (Emphasis added.)). In comparison to the short timeline that is contemplated for confirmation, creditors have at least 70 days after the date on which the debtor files the case to file a proof of claim. Fed. R. Bankr. P. 3002(c). And governmental units—frequent filers of proofs of claim alleging priority—have 180 days to file proofs of claim. 11 U.S.C. §502(b)(9)(A) & Fed. R. Bankr. P. 3002(c)(1). Because the Code requires that a chapter 13 plan pay most classes of claims entitled to priority in full, see §1322(a)(2), a challenge to the amount of a claim entitled to priority may of necessity need to be raised and resolved long after confirmation. See Fed. R. Bankr. P. 3012(b) ("A request to determine the amount of a claim entitled to priority may be made only by motion *after a claim is filed or in a claim objection*." (Emphasis added.)). As observed earlier, neither the Bankruptcy Code nor the Bankruptcy Rules sets a deadline for claim objections—another indication that the claims adjudication process may proceed apart from and after plan confirmation when that process is not needed to determine whether the court may confirm the debtor's plan.

The absence of any requirement that claim objections be adjudicated before confirmation serves a practical end. Objections to claim priority or allowance may be pointless until the debtor makes sufficient post-confirmation payments to the trustee to make a distribution to unsecured creditors imminent or at least likely. Before then, trustee and court resources available to administer these high-volume cases are typically better spent elsewhere. See *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004) (noting, in the context of a chapter 11 case, that "[i]t would greatly and needlessly disrupt ordinary, efficient means of reorganization to adopt a rule that all claims *must* be filed

and litigated to conclusion before a plan of reorganization is confirmed").

This case is illustrative. When the court confirmed the debtors' plan the record did not suggest that the debtors would be able to pay the trustee sufficient funds to make any payments on the Department's claim during the five-year plan term. The debtors' projected disposable income was only sufficient to fund payments to the holders of secured creditors, priority claims statutorily required to be paid in full, and administrative expenses. About five months after plan confirmation, however, the debtors requested modification of the plan to surrender a vehicle and cease payments to the holder of a claim secured by it. ECF Nos. 47, at 2. This unopposed modification gave rise to the possibility that the 60-month plan would be sufficiently funded to pay the holders of unsecured claims. Only then did the issue of whether the Department's claim is entitled to priority have practical significance: If the claim is entitled to priority under §507(a)(1)(B), as the Department asserts, then the Department will receive all of the funds the plan requires the trustee to pay to the holders of allowed unsecured claims until its claim is paid in full. If not, then the Department will have to share those funds pro rata with the holders of other allowed unsecured claims.

A debtor seeking to demonstrate that an alleged priority debt is dischargeable is also likely to wait to contest claim priority until after plan confirmation. Chapter 13 excepts from discharge any debt for a domestic support obligation—the linchpin of the Department's assertion of §507(a)(1)(B) priority that was removed by *Dennis*, 927 F.3d at 1017–18 (holding that benefit overpayments are not domestic support obligations). 11 U.S.C. §1328(a)(2) (excepting from discharge "any debt . . . of the kind specified in . . . paragraph . . . (5) . . . of section 523(a)"); §1328(c)(2) (excepting from discharge under §1328(b) "any debt . . . of a kind specified in section 523(a) of this title"); *id*. §523(a)(5) (specifying debts "for . . . domestic support obligation[s]"). To be eligible for a discharge, a chapter 13 debtor must either complete all payments under the plan, §1328(a), or demonstrate all of the following: the failure to make all such payments is

"due to circumstances for which the debtor should not justly be held accountable", the debtor has paid at least as much "under the plan on account of each allowed unsecured claim" as "would have been paid on such claim if the estate . . . had been liquidated under chapter 7", and it "is not practicable" to modify the plan under §1329, §1328(b). So, even when a debtor might be able to discharge a debt owed to a creditor that has erroneously claimed that its debt is entitled to priority status, it is often not sensible for the debtor to file an objection until well after plan confirmation.

The economic realities of claim adjudication in the context of individual debt adjustment under chapter 13, as shown by the circumstances of this case, thus weigh heavily against judicial creation of a rule under which a confirmed plan's treatment of a claim necessarily forecloses all later disputes over the allowance or priority status of that claim—a rule that, while championed by the Department, is absent from the text of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

3

The conclusion that plan confirmation does not foreclose later adjudication of claim priority or allowance does not entail that the confirmation order lacks preclusive effect. The extent to which an order confirming a plan forecloses adjudication of claim priority depends on application of law-of-the-case principles and judicial estoppel, as the Seventh Circuit made clear in *Hovis*, 356 F.3d at 822. See also *In re Gentry (Gentry II)*, 621 B.R. 863, 866–69 (Bankr. E.D. Wis. 2020) (applying *Hovis* in a chapter 13 case).

*Hovis* concerns a debtor's post-confirmation challenge to allowance of a claim in a chapter 11 case where the plan provided for claim adjudication after confirmation, not a challenge to the priority of an allowed claim in a chapter 13 case, but it addresses a similar issue under roughly analogous circumstances to those here. In *Hovis* the debtor listed a creditor's claim in his schedules, the creditor filed a proof of claim for about the same amount before the plan was confirmed, and the debtor objected to the claim after confirmation. The bankruptcy court and district court overruled the claim objection,

reasoning that confirmation of the plan foreclosed adjudicating the debtor's objection to the claim, citing *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000). Reversing the lower courts, the Seventh Circuit held that plan confirmation does not ordinarily foreclose claim adjudication. The court cabined *Adair* to sequential cases governed by the "normal application of preclusion", stating that "*Adair* and similar decisions that arise from sequential suits are irrelevant within one suit". 356 F.3d at 822. "What matter within a single suit", apart from any "deadlines set by statute and rule", are "the law of the case and judicial estoppel." *Id.*; see also *Gentry II,* 621 B.R. at 866–69; *In re Smith*, No. 06-20127, 2007 WL 1544366, at *13 (Bankr. E.D. Wis. May 29, 2007), aff'd sub nom. *Nissan Motor Acceptance Corp. v. Smith*, 07-C-0698, 2010 WL 4005056 (E.D. Wis. Oct. 12, 2010) ("The debtor's [claim] objection in this case does not constitute a 'collateral action'—he has raised this objection in the same case.").

    Again, the debtors' request that the court decide whether the Department's claim is entitled to priority is not foreclosed by any rule or Code provision, and the Department does not suggest otherwise. The Department argues that the confirmed plan provides that its claim is entitled to priority under §507(a)(1)(B), a confirmed chapter 13 plan can only be modified as permitted by §1329, and §1329 "does not authorize a debtor to reclassify a claim" as not entitled to priority. ECF No. 77, at 5–6. This claim-objection dispute, though, is not about whether the debtors can modify the confirmed plan; it is about whether the court can determine that the Department's claim is not entitled to priority. That request is properly made in a claim objection under Rule 3012(a)(2) asking the court to "determine . . . the amount of a claim entitled to priority under § 507". See also Fed. R. Bankr. P. 3012(b) ("A request to determine the amount of a claim entitled to priority may be made only by motion after a claim is filed *or in a claim objection*." (Emphasis added.)). Thus, contrary to the Department's contentions, §1329 has no particular bearing on the debtors' request to determine the non-priority status of its claim. Again, absent an applicable statute or rule, law of the

case and judicial-estoppel principles govern the preclusive effect of any determination that the Department's claim is entitled to priority that results from plan confirmation. See *Gentry II*, 621 B.R. at 866–69.

a

"[T]he law of the case doctrine is discretionary rather than mandatory." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 710 (7th Cir. 2016), opinion modified on reh'g, 832 F.3d 699 (7th Cir. 2016). As *Boyer* makes clear, the doctrine typically applies to require a bankruptcy court to conform rulings on later-contested matters—for example, claim adjudications—with earlier rulings unless there is "good cause" to do otherwise. *Id*. at 710–11. Even assuming that confirmation of the debtors' chapter 13 plan constitutes a "ruling" on the priority of the Department's claim, among the potential good reasons to depart from an earlier ruling is an "intervening change in the law[]". *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993); see also *Boyer*, 824 F.3d at 711 ("[A]s this rationale suggests, [the law-of-the-case doctrine] does not prohibit a court from revisiting an issue when there is a legitimate reason to do so, whether it be a change in circumstances, new evidence, or something the court overlooked earlier."); & *Choi v. Tower Research Capital LLC*, 2 F.4th 10, 21 (2d Cir. 2021) (quoting *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009)) ("Cogent and compelling reasons justifying a departure from the law of the case may include 'an intervening change in law, availability of new evidence, or "the need to correct a clear error or prevent manifest injustice."'").

When the debtors proposed and confirmed their plan the Department's assertion of priority status was supported by decisions from the District Court and this court. See *Wis. Dep't of Workforce Dev. v. Ratliff*, 390 B.R. 607, 617 (E.D. Wis. 2008) (holding that a claim "for food stamp overpayments" was entitled to priority under §507(a)(1)(B)); & *Wisconsin v. Schauer (In re Schauer)*, 391 B.R. 430, 431 (Bankr. E.D. Wis. 2008) (ruling that "child care overpayments are domestic support obligations within the meaning of

11 U.S.C. §101(14A) and thus nondischargeable pursuant to 11 U.S.C. §523(a)(5)"). Even if the Seventh Circuit's contrary decision in *Dennis* did not "change the law," because *Ratliff* and *Schauer* are not precedential, *Dennis* creates a circumstance that militates against applying law of the case to defeat the debtors' claim objection.

*Dennis*'s holding entails that the Department's assertion of priority is incorrect, and the Department makes no effort to contend otherwise. So, even if confirmation of the plan constitutes a "determination" that the claim is entitled to priority, *Dennis* renders that determination clearly erroneous, and under these circumstances, using the law-of-the-case doctrine to foreclose adjudicating whether the claim is entitled to priority threatens to work a manifest injustice—foreclosing the debtors' ability to discharge the claim after completing the plan. See *Pepper v. United States*, 562 U.S. 476, 506–07 (2011) (Law of the case "does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'" (alteration in original) (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997))); see also *Gentry II*, 621 B.R. at 867 ("[I]ntervening case law provided a basis to revisit the priority status of the State's claim."); *In re Gentry* (*Gentry I*), No. 15-20990, 2020 WL 2479662, at *4 (Bankr. E.D. Wis. May 13, 2020) ("Now that intervening, controlling caselaw means that our own 'district precedent' (*In re Ratliff*) is in error, this Court is bound to follow *In re Dennis*, and will do so here, as Mr. Gentry's case is still open."). Under these circumstances, the law-of-the-case doctrine does not require overruling the debtors' claim objection.

b

The Department does not invoke judicial estoppel by name, but it suggests application of the doctrine, asserting that confirmation of the plan depended on its claim being entitled to priority under §507(a)(1)(B) so the debtors' current arguments to the contrary are foreclosed. Judicial estoppel is inapplicable.

Judicial estoppel serves "'to protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of

the moment.'" *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (citations omitted) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982); *United States v. McCaskey*, 9 F. 3d 368, 378 (5th Cir. 1993)).

> [T]hree factors typically inform a court as to whether to apply the doctrine: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent opposition in a later proceeding would create the perception that either the first or second court was misled"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 643 (Bankr. N.D. Ill. 2019) (quoting *In re Knight-Celotex, LLC*, 695 F.3d 714, 721–22 (7th Cir. 2012)); see also *Zedner v. United States*, 547 U.S. 489, 504 (2006). Ultimately, though, "[b]ecause the rule is intended to prevent 'improper use of judicial machinery', judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire*, 532 U.S. at 750 (citations omitted) (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

The Department has not shown a convincing reason to apply judicial estoppel to foreclose the debtors' claim objection. Confirmation of the plan did not depend on an adjudication of the priority of the Department's claim under §507(a)(1)(B) because when the plan was confirmed, it appeared that no funds would be available for payments to the holders of any allowed unsecured claims, so whether the Department's claim was entitled to priority under §507(a)(1)(B) had no consequence. As explained in *Hovis*, a plan's promise to pay a claim does not warrant application of judicial estoppel unless the plan's treatment of the claim was litigated in connection with confirmation or confirmation depended on the accuracy of that treatment:

> If confirmation of the plan depended on [a] . . . claim being *correct*, then judicial estoppel might block a post-confirmation effort to deny the claim's

> validity. . . . Yet the parties did not debate the accuracy of the . . . claim at the confirmation hearing (so Hovis did not prevail on any theory about the claim's value), and a plan promising to pay all valid claims need not imply that any given claim *is* valid to the full extent of the creditor's demand.

356 F.3d at 823. Here, the parties did not debate the priority of the claim before confirmation, and confirmation clearly did not depend on the Department's claim being entitled to priority. What is more, the Department, which concedes that its claim is *not* entitled to priority under §507(a)(1)(B), is not well positioned to argue that the debtors stand to gain an *unfair* advantage from such a determination. The debtors are therefore not judicially estopped from objecting to the Department's assertion of priority.

III

For the foregoing reasons, IT IS ORDERED that:

1. The debtors' claim objection is sustained, and the Department's claim is determined to *not* be entitled to priority under §507 in any amount.

2. Unless following this determination the trustee withdraws her objection to the debtors' pending request to modify the plan, the trustee must file, by no later than **October 12, 2021**, a brief that explains, in detail, all remaining bases for her objection to the modification; the debtors must file a response brief by no later than **October 28, 2021**.

#####