UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Antonio Terrell and                     Case No. 18-28674-gmh
Angel Marie Terrell,                     Chapter 13

          Debtors.

**DECISION AND ORDER GRANTING
REQUEST TO MODIFY CONFIRMED PLAN**

On the same day they filed their bankruptcy case the debtors filed a chapter 13 plan using this district's mandatory plan form. The plan obligated the debtors to pay the trustee for five years to fund the plan's distributions to creditors holding claims secured by their cars, holders of priority tax and child support debt that the plan paid in full, and administrative expenses. Their plan named the Wisconsin Department of Children and Families as a creditor in §4.5, a section of the model plan designed for listing domestic support obligations owed to governmental entities—claims the Bankruptcy Code affords priority in 11 U.S.C. §507(a)(1)(B). (All subsequent references to statutory sections are to the Bankruptcy Code, title 11 of the United States Code, unless otherwise specified.)

The Department filed a proof of claim stating that the debtors owed it more than $29,000 for benefit overpayments and asserting that the claim was entitled to priority under §507(a)(1)(B). The Department's assertion of priority was contradicted by *In re Dennis*'s holding that benefit overpayments are *not* domestic support obligations entitled to priority under §507(a)(1)(B). 927 F.3d 1015, 1017–18 (7th Cir. 2019). Applying *Dennis* this court sustained the debtors' objection to the Department's claim and

declared that no amount of the claim is entitled to priority. *In re Terrell*, Case No. 18-28674-gmh, 2021 WL 4304839 (Bankr. E.D. Wis. Sept. 21, 2021).

The debtors' success in obtaining a determination that the Department's claim is not entitled to priority underpins the contested matter at issue here—the Department's objection to the debtors' request to modify their plan under §1329(a) to reduce the length of time they must pay the trustee from five years to three. This shortened period is sufficient to fund all distributions required by the plan, except any amount owed to the Department, because the debtors previously surrendered collateral and reduced the plan's distributions to secured creditors.

The Department alone objects to the debtors' proposed plan modification. The Department contends that the confirmed plan commits the debtors to providing for its claim as one entitled to priority under §507(a)(1)(B). As a result, the Department argues, the debtors cannot shorten the plan term because they do not propose to pay the Department's claim in full and §1322(a)(4), made applicable to requests to modify the plan by §1329(b), requires that "the plan provide[] that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." §1322(a)(4). The Department insists it must be treated as holding a claim entitled to §507(a)(1)(B) priority—regardless of *Dennis* and the September 21, 2021 decision and order ruling to the contrary—because the language of the confirmed plan commits the debtors to that treatment.

As this decision will explain, §1329(a) authorizes the debtors to modify the plan to shorten the plan term and reduce plan payments, and neither the Bankruptcy Code nor the preclusive effect of the confirmed plan prevents them from doing so.

I

The original confirmed plan provided that the debtors would pay the trustee an amount approximately equal to their net disposable income for five years (stated in the

plan as 60 months), and those payments were about equal to the amount the plan provided to pay creditors who held claims secured by the debtors' vehicles, administrative expenses, and priority claims for taxes and child support. See ECF Nos. 2, 42, 43 & 45.

Given that the debtors' net disposable income was roughly equivalent to their payments to the trustee to fund plan distributions to these other creditors, the debtors' plan could not feasibly promise full payment of the Department's claim. Both the plan and the Department's proof of claim presumed that the claim was entitled to priority under §507(a)(1)(B), consistent with previous decisions of the district court and this court. The debtors listed the claim in §4.5, the part of the model plan that gives effect to Bankruptcy Code §1322(a)'s requirement that a chapter 13 plan either (1) pay a claim entitled to priority under §507(a)(1)(B) in full or (2) pay "all of the debtor's projected disposable income" in a five-year plan, even if, like the debtors in this case, the Code would otherwise limit the plan term to three years.[1] §1322(a)(4); see also §1322(a)(2).

The debtors now request to modify their confirmed chapter 13 plan under §1329 to shorten the plan term to three years. Before the court sustained the debtors' objection to the Department's claim, the trustee objected to the debtors' request to modify the plan, principally citing §1322(a)(4) (made applicable to requests to modify the plan by §1329(b)) and stating, "the debtors must provide all projected disposable income for a 5-year period as the debtors have a section 507(a)(1)(B) claim that will not be paid in full." ECF No. 72, at 1. After the court ruled that the Department's claim is not entitled to

---

[1] The debtors reported current monthly income that when multiplied by 12 was below the median family income for a family of their size in Wisconsin. See ECF No. 1, at 79–81 (containing the debtors' responses to Official Form 122C-1 "Chapter 13 Statement of [] Current Monthly Income and Calculation of Commitment Period"). As a result, §1322(d)(2) limited the length of their chapter 13 plan to three years, "unless the court, for cause, approve[d] a longer period" not to exceed five years. §1322(d)(2). The debtors' original proposal that the plan fund distributions to pay the claims secured by their vehicles afforded cause to confirm their five-year plan, and §1322(a)(4) would have required a five-year plan if the Department's claim was entitled to priority under §507(a)(1)(B), as asserted by the Department's proof of claim and as listed in the plan.

priority, the trustee withdrew her objection to plan modification. ECF No. 103. The Department, which did not timely object to the debtors' request to modify the plan, seeks to continue the trustee's objection, and, under the circumstances, the court permits the Department to stand in the trustee's shoes.[2]

## II

## A

The Department principally argues that the court's determination that its claim is not entitled to priority has no impact on the debtors' request to modify the confirmed plan. The Department contends that (1) the confirmed plan, which §1327(a) makes binding on the debtors, established that the Department's claim is one entitled to priority under §507(a)(1)(B), and (2) §1329 does not authorize the debtors to "reclassify" the claim; thus, (3) §§1322(a)(4) and 1329(b) prevent the debtors from modifying the plan to shorten the plan term. The linchpin in this argument is that because the debtors listed the Department in §4.5 of the plan form, which states that creditors listed there have an "allowed priority claim[] . . . based on a domestic support obligation that is owed or assigned to a governmental unit as provided by 11 U.S.C. § 507(a)(1)(B)", the confirmed plan precludes any later determination of the amount, if any, to which the Department's claim is entitled to priority under §507(a)(1)(B). ECF No. 2, at 5.

---

[2] The debtors filed a motion to strike the Department's late-filed objection to the debtors' request to modify their plan. ECF No. 109. As noted at the November 1, 2021 hearing, the Department's responses to the debtors' objection to its claim presented the essence of its opposition to plan modification. For this reason and because the trustee had previously objected to modification at least in part for reasons akin to those argued by the Department, no unfair prejudice to the debtors results from letting the Department continue the opposition to plan modification that the trustee has abandoned. In addition, the Bankruptcy Code might be read to impose an obligation on the court to ensure that a non-consensual proposal to modify the plan conforms to the provisions of §1325(a) made applicable by §1329(b). See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) ("[T]he Code makes plain that bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements of §§ 1328(a)(2) and 523(a)(8)."). Under these circumstances, adjudicating this controversy after considering the Department's arguments on their merits, rather than ruling that the Department forfeited or waived those arguments, better serves the fair and just administration of this contested matter. For these reasons, this decision and order denies the debtors' motion to strike.

The Department's construction of the plan's formulaic text is incorrect. As this decision will explain, the confirmed plan does not establish that the Department's claim is irrefutably entitled to priority in the amount stated in its proof of claim, and it does not foreclose a party in interest from requesting after plan confirmation that the court determine the extent to which the claim is entitled to priority.

1

Before turning to plan construction, a point of necessary clarification on the difference between claim allowance and priority. The Department's objection to plan modification repeatedly contends that confirmation of the debtors' plan provided the Department with "an allowed priority claim". See, e.g., ECF No. 107, at 3–4, & 6–7. But neither the debtors' confirmed plan nor their proposed modification determines the allowed nature of the Department's claim or the amount of the claim that is entitled to priority.

Allowance and priority both affect whether and how a chapter 13 plan must provide for a claim. See, e.g., §§1322(a)(2) (plan's payment of priority claims), 1325(a)(4) (amount plan must pay to holders of allowed unsecured claims), 1325(a)(5) (plan's treatment of allowed secured claims), and Fed. R. Bankr. P. 3021 (providing that "after a plan is confirmed, distribution shall be made to creditors whose claims have been allowed"). But the concepts are distinct—claim "[a]llowance", as the Seventh Circuit has observed, "has nothing to do with priority", *In re Altheimer & Gray*, 601 F.3d 740, 741 (7th Cir. 2010)—and they are governed by different Bankruptcy Code sections and Bankruptcy Rules.

Allowance of claims is governed by §502 of the Bankruptcy Code and various rules that, read together, provide as follows: A proof of claim must be filed for the claim to be allowed (except in certain circumstances that do not apply here). Fed. R. Bankr. P. 3002(a). If a proof of claim is filed, then the claim "is deemed allowed" unless someone objects. §502(a). A properly executed and filed proof of claim is "prima facie evidence of

the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). And "[a]n objection to the allowance of a claim", Fed. R. Bankr. P. 3007(a)(1), obligates the court to "determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition" and then "allow such claim in such amount, except to the extent that" one or more bases for disallowing the claim apply, §502(b).

Priority, on the other hand, is governed by §507, and requests to determine "the amount of a claim entitled to priority under § 507" are governed by Rule 3012. Fed. R. Bankr. P. 3012(a)(2). Rule 3012 provides that such a request may "be made . . . by motion after a claim is filed" or "may be made . . . in a claim objection", Fed. R. Bankr. P. 3012(b), as the debtors did here. Rule 3012 also governs a debtor's "request to determine the amount of a secured claim" and such request may also be made in a claim objection. Fed. R. Bankr. P. 3012(b). The rules thus contemplate two types of claim objections, those requesting that the court disallow a claim (in whole or in part) and those requesting that the court determine the extent to which an allowed claim is entitled to priority or the extent to which it is secured (in whole or in part). The debtors elected to make their request for a determination of the amount of the claim entitled to *priority* in a claim objection, as permitted by Rule 3012(b), but that claim objection did not implicate *allowance* of the claim.

The Department holds an allowed claim because it filed a timely proof of claim, and no one has sought disallowance of it under §502(b) or otherwise objected to its validity or amount. The court sustained the debtors' objection to the Department's assertion of priority, however, and ruled that no amount of that claim is entitled to priority. Thus, the Department holds an allowed unsecured claim, no amount of which is entitled to priority. Again, this process of claim adjudication—the process by which a bankruptcy court determines the extent to which claims are allowed or entitled to priority—is distinct from the process of determining whether a chapter 13 plan provides for claims in a manner consistent with chapter 13's plan formation and

confirmation requirements.

2

As noted above, the Department's objection to plan modification primarily argues that the confirmed plan expressly provides that its claim is entitled to priority under §507(a)(1)(B), so that issue was necessarily determined by the confirmation order, even if the parties did not actually litigate it, and that determination, rather than the court's later ruling that the claim is *not* entitled to priority, entails that the debtors cannot shorten the plan term because §1322(a)(4), made applicable by §1329(b), prohibits it. The Department's argument thus depends entirely on reading the plan to determine conclusively that the Department's claim is entitled to priority under §507(a)(1)(B).

a

The law governing the interpretation of a confirmed chapter 13 plan is surprisingly unsettled. In responding to the debtors' claim objection, the Department, quoting *In re Harvey*, 213 F.3d 318 (7th Cir. 2000), suggested that a confirmed plan is treated as a contract and interpreted under state law. ECF No. 85, at 2. But the Department's chosen quote was from *Harvey*'s summation of the bankruptcy court's underlying decision, not the holding of that case. See 213 F.3d at 320. *Harvey* goes on to openly criticize that approach to interpreting the plan, suggesting that the better approach may be "something analogous to the four-corners principle that applies to federal consent decrees", before determining that "the parties ha[d] not made an issue of this point . . . [and the court did not] think that the application of the four-corners principle or some other federal rule would make a difference to the outcome" and so it left "further exploration of this problem to another day." *Id.* at 321–22.

The Seventh Circuit's caselaw on this issue is not easily reconciled. *Harvey*'s criticism of the bankruptcy court's approach is at odds with other Seventh Circuit cases reasoning that "[p]rinciples of contract law apply to interpreting a plan of

reorganization: 'A confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations.'" *FCC v. Airadigm Commc'ns, Inc. (In re Airadigm Commc'ns, Inc.)*, 616 F.3d 642, 664 (7th Cir. 2010) (quoting *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002)). Still, several other Seventh Circuit cases hold that "[a] bankruptcy court's interpretation of a plan it confirmed is . . . an interpretation" not of a contract but "*of its own order*" that "is subject to full deference . . . and may be overturned only if the record shows an abuse of discretion in the interpretation." *Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.)*, 547 F.3d 763, 768 (7th Cir. 2008) (emphasis added) (citing *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994)); see also *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 n.4 (2009) ("Numerous Courts of Appeals have held that a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference.").

As *Harvey* suggests, state contract law is an odd lens through which to interpret a court-confirmed plan under chapter 13 of the Bankruptcy Code. Even if one can overlook interjecting the varieties of state law into the construction of plans confirmed under a federal statute founded on Congress's power to enact "uniform Laws on the subject of Bankruptcies throughout the United States" (U.S. Const. Art. I, §8, cl. 4), contract law's interpretive goals do not all easily fit the task of interpreting chapter 13 plans. A central aim of Wisconsin contract law, for example, is to "interpret[] contracts that were freely entered into" by "determin[ing] and giv[ing] effect to the parties' intention" because "Wisconsin public policy favors freedom of contract", which "is based on the idea that individuals should have the power to govern their own affairs without interference." *Solowicz v. Forward Geneva Nat., LLC*, 780 N.W.2d 111, 124 (Wis. 2010) (quoting *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 607 N.W.2d 276, 282 (Wis. 2000) (citing *Gorton v. Hostak, Henzl & Bichler, S.C.*, 577 N.W.2d 617, 622–623 (Wis. 1998))). A confirmed chapter 13 plan is hardly the result of empowering individuals to govern their own affairs without interference. To the contrary, a chapter 13 plan, which

may only be filed by the debtor, see §1321, can "modify the rights" of most creditors under contracts that were freely entered into before the debtor commenced a bankruptcy case. See §1322(b)(2), (b)(5) & (c); *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329–30 (1993). And confirmation of a chapter 13 plan, which must be by court order, makes the plan's terms binding on all creditors, including those whose rights the plan modifies, even if "such creditor[s] . . . objected to . . . or . . . rejected the plan." §1327(a). It makes little sense, broadly speaking, to transplant state contract law—designed to determine and give effect to the intentions of freely bargaining parties—for use in interpreting a confirmed chapter 13 plan, which commonly results from a deliberate effort by one party to upset those very intentions, approved by a federal court through a process codified by Congress and overseen by a trustee designated by the United States Department of Justice.

Of course, as some cases suggest, various *principles* of contract law may reasonably guide a court in interpreting a bankruptcy plan. For instance, the following rules of contract law seem congruent with a sensible approach to construing a plan: Contracts are ordinarily construed "as they are written", "according to [their] plain or ordinary meaning, consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" *Tufail v. Midwest Hosp., LLC*, 833 N.W.2d 586, 592 (Wis. 2013) (citation omitted) (quoting *Columbia Propane, L.P. v. Wis. Gas Co.*, 661 N.W.2d 776, 783 (Wis. 2003); *Seitzinger v. Cmty. Health Network*, 676 N.W.2d 426, 433 (Wis. 2004)) (citing *Huml v. Vlazny*, 716 N.W.2d 807, 820 (Wis. 2006)). "Where the terms of a contract are clear and unambiguous," it is "construe[d] . . . according to its literal terms." *Id.* (citing *Maryland Arms Ltd. P'ship v. Connell*, 786 N.W.2d 15, 20–21 (Wis. 2010)). But "[i]f the terms of the contract are ambiguous", meaning they are "fairly susceptible of more than one construction", then "evidence extrinsic to the contract itself may be used". *Id.* (quoting *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 75 (Wis. 1996)) (citing *Seitzinger*, 676 N.W.2d at 433).

The "four-corners principle" mentioned in *Harvey* as governing the interpretation of consent decrees also suggests that a court construing a writing (like a confirmed chapter 13 plan) should first focus on the text. "[A]ny command of a consent decree or order must be found 'within its four corners'". *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 233 (1975) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)). Or, more simply, like a contract, "the instrument must be construed as it is written". *Armour & Co.*, 402 U.S. at 682. In fact, because "[c]onsent decrees and orders have attributes both of contracts and of judicial decrees", courts interpreting consent decrees may rely on "certain aids to construction" that normally apply to contracts— including "the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree"—without "depart[ing] from the 'four corners' rule". *ITT Cont'l Baking*, 420 U.S. at 236 n.10, 238.

Consent decrees, however, are typically more like contracts than are chapter 13 plans. "Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms", and they embody "as much of [the parties'] opposing purposes as [they] have the bargaining power and skill to achieve." *Armour & Co.*, 402 U.S. at 681–82. Debtors and creditors may negotiate certain terms of a chapter 13 plan, but unless the negotiated provisions are permissible and the other requirements for confirmation are satisfied, the plan may not be confirmed (and thus the negotiated terms will not be binding). And while creditors may seek to persuade debtors to offer favorable plan terms, ultimately only a debtor may file a chapter 13 plan, §1321, and its confirmation may not require and often will not depend on creditor acceptance, §1325. Accordingly, the construction aids that a court may employ to construe a consent decree are arguably less applicable when construing a confirmed plan.

The upshot of all this seems to be that, in construing a confirmed chapter 13 plan,

a court ordinarily ought to focus on the plan as written, give its terms their plain or ordinary meaning based on what a reasonable person in the appropriate community of bankruptcy practitioners would have understood them to mean under the relevant circumstances, and turn to extrinsic evidence or other aids to construction only to the extent necessary to discern that meaning or to resolve genuine ambiguities in the text. These principles inform the court's interpretation of the confirmed plan in this case, which this decision now undertakes mindful that this "court is in the best position to interpret its own orders." *Tex. N.W. Ry. Co. v. Atchison, Topeka & Santa Fe Ry. Co. (In re Chi., Rock Island & Pac. R.R. Co.)*, 860 F.2d 267, 272 (7th Cir. 1988); see also *Matter of Weber*, 25 F.3d 413, 416 (7th Cir. 1994) (Stating in a chapter 12 case that "[i]n reviewing a bankruptcy court's interpretation of a confirmed plan, then, the reviewing court should extend to that interpretation the same deference that is otherwise paid to a court's interpretation of its own order.").

b

The plan lists the Department as having a claim entitled to priority under §507(a)(1)(B) and in that way provides for the Department's claim as a priority claim. At the center of the parties' dispute over the propriety of the debtors' request to modify the plan is the following question: In providing for the Department's claim as an "allowed priority" claim, did the plan (1) conclusively determine that the claim *is* one entitled to priority under §507(a)(1)(B) or (2) provide for payment of that claim *to the extent that* it is entitled to priority, as may be subsequently determined after a request made by motion or claim objection? The answer to that question depends on how one reads §4.5 of the plan—text required by this district's mandatory model plan form—as informed by the Bankruptcy Code and its implementing rules. See Fed. R. Bankr. P. 3015(c) & 3015.1; see also Bankr. E.D. Wis. L.R. 3015(a).

The text of §4.5 of the plan provides in relevant part as follows:

The allowed priority claims listed below are based on a domestic support obligation that is owed or assigned to a governmental unit as provided by 11 U.S.C. § 507(a)(1)(B) and will be paid less than the full amount of the claim under 11 U.S.C. § 1322(a)(4). If the *Available funds to creditors in Parts 3 and 4* box is selected, then there should be no distribution to nonpriority unsecured creditors in Part 5 until or unless the § 507(a)(1)(B) claim is paid in full. *This plan provision requires that payments in § 2.1 be for a term of 60 months*; see 11 U.S.C. § 1322(a)(4).

| Name of Creditor | Amount of claim to be paid |
|---|---|
| | ☑ Available funds after creditors in Parts 3 and 4 are paid |
| Department of Children and Families | ☐ $ ___ |
| | ☐ Percent of claim ___% |

ECF No. 2, at 5. This text must be construed in the context of the model plan's structure and the Code provisions to which it expressly refers because, among other reasons, conformity with the applicable provisions of the Bankruptcy Code is a plan-confirmation requirement. See 11 U.S.C. §1325(a)(1); see also *Matter of Cherry*, 963 F.3d 717, 719 (7th Cir. 2020).

On its face §4.5 is ambiguous, an ambiguity made more apparent by the model plan's structure and the Code provisions that inform that structure. Section 4.5 of the debtors' plan can be plausibly construed to provide that the Department's claim will **not** be paid in full, but will instead be treated under §4.5, *to the extent* that the Department has a claim that is both generally an "allowed claim" entitled to priority for purposes of §4.1 and specifically a claim entitled to priority under §507(a)(1)(B). The Department's arguments require a different construction—that §4.5 of the plan establishes conclusively that its claim is both an allowed claim and a claim entitled to priority under §507(a)(1)(B) in its full amount (so confirmation of the plan makes later litigation of allowance or priority irrelevant).

Based on the text alone, the Department's reading is plausible. But the Department's proposed reading is less tenable than the competing construction, which leaves open later adjudication of the extent to which the claim may be allowed or entitled to priority, in part because the Department's reading risks or results in administrative and procedural conflicts that the competing construction does not. Under the Department's reading of the plan, plan confirmation determines that the Department has an allowed claim entitled to priority in an indeterminate amount (because the plan does not state the amount of the claim, the amount entitled to priority, or the amount to be paid to the Department on the claim). See ECF No. 2, at 4–5. Under the Department's interpretation of the plan, if the Department had not filed a proof of claim (and no one filed one on its behalf), the trustee would not be authorized to pay the Department's claim, notwithstanding the language in the plan "allowing" that claim, because the plan requires a timely filed proof of claim for payment. ECF No. 2, at 1. But, also under the Department's interpretation, the trustee could not have paid any funds to holders of nonpriority unsecured claims, because §4.5 of the plan would prohibit such payments by providing that "there should be no distribution to nonpriority unsecured creditors in Part 5 until or unless the § 507(a)(1)(B) claim is paid in full." ECF No. 2, at 5.

The Department's proposed construction of §4.5 would also make it (and §4.5 of the district's model plan form on which it is based) inconsistent with Rule 3002(a), which requires that, subject to certain exceptions that do not apply here, a creditor "must file a proof of claim . . . for the claim . . . to be allowed". As the court's September 21 decision and order explains, the Code and its enabling rules establish a structure in which the court will often be required to confirm a chapter 13 plan well before the deadline for governmental entities to file proofs of claim alleging priority under §507. *Terrell*, 2021 WL 4304839, at *3–4 (citing §§301(b), 502(b)(9)(A), 1322(a)(2), & 1324(b) and Fed. R. Bankr. P. 2003(a), 3002(c), & 3012(b)). Interpreting §4.5's reference to "allowed

priority claims" as contemplating that the listed creditor will file a proof of claim that is subject to later objections to contest the extent to which that claim may be allowed or entitled to priority—rather than as entitling the creditor to an allowed priority claim of an unknown amount, even if it files no proof of claim—sensibly avoids any conflict with Rule 3002(a).

Most important, the plan, as the Department would construe it, necessarily conflicts with Rule 3012(b). Under the Department's construction, §4.5 of the plan determines that the Department has a claim entitled to priority under §507(a)(1)(B) in "[t]he priority debt amount[] listed on [the] filed proof of claim". See ECF No. 2, at 4 ("The priority debt amounts listed on a filed proof of claim control over any contrary amounts listed in this section."). The Department's construction of the plan would deem proofs of claim filed by creditors listed in §4.5 of the plan to be both "allowed" and entitled to priority in whatever amount alleged, and no one, including unsecured creditors who will not receive a plan distribution until all claims entitled to priority are paid, would be able to contest those claims. This outcome is both counterintuitive and inconsistent with Rule 3012(b). Rule 3012(b) provides that "[a] request to determine the amount of a claim entitled to priority may be made *only by motion after a claim is filed or in a claim objection*." (Emphasis added.) The rule's limitation on how one may seek to determine the extent of a claim's entitlement to priority—a limitation that excludes using plan text—is underscored by the Rule's immediately preceding provision that, with respect to claims filed by nongovernmental entities, "a request to determine the amount of a secured claim may be made by motion, in a claim objection, *or in a plan* filed in a chapter 12 or chapter 13 case." Fed. R. Bankr. P. 3012(b) (emphasis added). Again, the debtors' plan is more plausibly read to permit parties to request a determination of the extent to which a claim is entitled to priority in the manner provided by Rule 3012(b) even after plan confirmation, rather than, as the Department would read it, to determine conclusively the amount of the claim entitled to priority

based on the confirmed plan's listing of the Department as holding an "allowed priority" claim and an implicit reference to the Department's later-filed proof of claim—a procedure that Rule 3012(b) explicitly does *not* authorize and implicitly forbids.

These flaws in the Department's proposed construction of the plan garner greater interpretive weight because the relevant language of §4.5 is found in the district's mandatory local chapter 13 plan and is similar to language in the national Official Form, which "must be used" wherever a Local Form has not been adopted. Fed. R. Bankr. P. 3015(c); see Fed. R. Bankr. P.3015.1; see also Bankr. E.D. Wis. L.R. 3015(a) (requiring chapter 13 debtors to use the local model plan form). The district's model chapter 13 plan was adopted after public notice and opportunity for comment, as authorized by Rule 3015.1. See Fed. R. Bankr. P. 3015.1(a) & Bankr. E.D. Wis. L.R. 3015(a). And local forms, like local rules, must be consistent with the Federal Rules of Bankruptcy Procedure. See Fed. R. Bankr. P. 9029(a). So, while a chapter 13 plan drafted from scratch by a debtor could be plausibly construed to result in (or risk) the kinds of administrative issues and procedural violations the Department's construction entails, a plan conforming to mandatory form language cannot reasonably be so construed.

For these reasons, the confirmed plan as written—accorded its plain meaning, consistent with how a reasonable person in the community of bankruptcy practitioners would best understand its terms under the circumstances, including the circumstances under which its operative language was drafted and employed—does **not** provide that the Department *has* an allowed claim entitled to priority under §507(a)(1)(B), but instead provides that the Department's claim will be paid as a priority claim in the manner permitted by §1322(a)(4) *to the extent* that the claim is entitled to priority under §507(a)(1)(B). And, as the September 21 decision and order determined, no amount of the Department's claim is entitled to priority under that section.

B

This construction of the plan reveals the error in the centerpiece of the

Department's objection to the debtors' request to modify the plan—that confirmation of the debtors' plan conclusively determined that the Department's claim is entitled to §507(a)(1)(B) priority. Although the plan provides that "[t]he priority debt amounts listed on a filed proof of claim control", for the reasons already explained, the claim amounts entitled to priority remain open to determination through motion or claim objection, as Rule 3012(b) requires. Because the court has determined in accordance with Rule 3012(b) that no amount of the Department's claim is entitled to priority, nothing prevents the debtors from using §1329(a)'s authority to reduce the plan commitment period to three years.

The Department correctly observes that §1329 "provides only a few 'limited' ways a debtor can modify that plan." ECF No. 107, at 4 (quoting *Matter of Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994)). Section 1329(a) authorizes debtors, trustees, and holders of allowed unsecured claims to modify confirmed chapter 13 plans to, among other things, alter the plan's commitment period or the amount paid to classes of creditors. That section provides that "the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan" or "(2) extend or reduce the time for such payments". §1329(a)(1) & (2).

The requested plan modification reduces the time during which the debtors must make payments under the plan from 60 months to 36 months. ECF No. 67, at 2. The modification also reduces payments on unsecured claims by decreasing the amount of the debtors' periodic payments to the trustee to around $251 per month for the last 12 months of the plan.[3] *Id.* And the modification increases payments on administrative

---

[3] The debtors had previously modified their plan to require monthly payments of about $323 to the trustee, reduced from about $750 per month in the original plan, after surrendering a claim-securing vehicle and reducing the plan's payments to that creditor. This earlier post-confirmation modification reduced the total amount of payments under the plan from approximately $45,000 to about $25,000. ECF No. 47 at 2; ECF No. 2, at 1–2.

expenses (attorney's fees) by $300 to compensate counsel for filing the modification request. *Id.*

The proposed modified plan's reduction in the time for the debtors to make payments under the plan from five years (originally 60 months from plan confirmation) to three years (ending September 2021, which is 36 months from the debtors' first payment to the trustee) corresponds with one of the modifications authorized by §1329(a)(2) (allowing post-confirmation modifications to "extend or reduce the time for" "payments under such plan"). And because §1329(a)(1) permits modification of the plan to "increase or reduce the amount of payments on claims of a particular class provided for by the plan", the reduction in payment to holders of unsecured claims and increase in payment to cover the additional administrative expense of filing the request to modify the plan also fit within the categories of plan modifications authorized by §1329(a).

Restrictions on modifying a chapter 13 plan after confirmation are contained in §1329's other subsections. Of relevance here, §1329(b) makes many of §1322's limitations on plan construction and §1325(a)'s limitations on plan confirmation applicable to post-confirmation modifications. §1329(b)(1) ("Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.").

The modified plan's term and claim-payment provisions comply with the Code sections made applicable by §1329(b) and with §1329's other limitations. The plan as modified has paid all remaining secured claims, administrative expenses, and claims entitled to priority under §507(a)(1)(A), as required by §1329(b)'s incorporation of §§1322(a) & (b) and 1325(a). The proposed plan modification shortens the plan term to three years, but the applicable statutory provisions do not require a longer term under these circumstances, now that the Department's claim has been determined not to be a §507(a)(1)(B) priority claim requiring a five-year plan term in the absence of full

payment.

The Department's objection does not contest any of this directly. It instead characterizes the proposed plan modification as reclassifying its claim and argues that claim reclassification is not authorized because it is not among the grounds for modification listed in §1329(a). ECF No. 107, at 4. While it is correct that claim "reclassification" is not found in §1329(a), it is also irrelevant. The debtors' plan modification does not "reclassify" the Department's claim. Again, the debtors' plan modification reduces the time that they must pay the trustee to make distributions to creditors, reduces the amount paid unsecured creditors by reducing the debtors' trustee payments, and increases slightly payments on administrative expenses. That's it. And, as explained above, §1329(a) allows for each of these modifications. See §1329(a)(1) & (2). True, the plan as modified still lists the Department in §4.5's subsection for (potentially) allowed priority claims, but, as also explained above, that listing makes no difference here because the court has determined that no amount of the Department's claim is entitled to priority under §507(a)(1)(B). There is no less-than-fully-paid claim entitled to priority that triggers §1322(a)(4)'s five-year term requirement. As a result, the debtors may modify the plan to reduce their payment term to three years without running afoul of §1329(b)'s incorporation of §1322(a)(4), which *would* require the debtors to make plan payments for five years, *if* the Department's claim *were* entitled to priority under §507(a)(1)(B).[4]

---

[4] Because the plan modification does not "reclassify" the Department's claim, the decisions the Department cites for the proposition that §1329(a) does not authorize a plan modification to "reclassify" claims have no bearing. See *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 533 (6th Cir. 2000); *In re Moncree*, 511 B.R. 922, 925 (Bankr. E.D. Wis. 2014); *In re Smith*, 259 B.R. 323, 326 (Bankr. S.D. Ill. 2001); and *In re Meeks*, 237 B.R. 856, 860 (Bankr. M.D. Fla. 1999). Rule 3012(b) requires a debtor to file a motion or a claim objection to contest a proof of claim's assertion of priority—to request "reclassification," as the Department would label it, or, more accurately, to request a determination of whether or to what extent the claim actually is entitled to priority. As explained above, the debtors filed such a claim objection. The Department opposed the objection solely on preclusion grounds. The court ruled that plan confirmation did not preclude the claim objection and no amount of the Department's claim is entitled to priority.

The Department would have the court reject this syllogism based on its insistence that plan confirmation vested its claim with priority status—a status made binding on the debtor in the issue preclusion sense by §1327(a), which states, "[t]he provisions of a confirmed plan bind the debtor and each creditor". But, as the September 21 decision and order explains, the extent to which an order confirming a plan is binding under §1327(a) is governed by law-of-the-case principles and judicial estoppel. See *Terrell*, 2021 WL 4304839, at *5. That is the teaching of *In re Hovis*, which states in explicating the preclusive effect of a confirmed chapter 11 plan, "issue preclusion has no role within a unitary, ongoing proceeding. . . . What matter within a single suit are the deadlines set by statute and rule, plus the law of the case and judicial estoppel."[5] 356 F.3d 820, 822 (7th Cir. 2004); see also *Gentry*, 621 B.R. at 866–69 (applying

---

Therefore, no claim entitled to §507(a)(1)(B) priority is provided for by the plan that would require a modification under §1329(a) to have a five-year term due to §1329(b)'s incorporation of §1322(a)(4).

　　The Department also urges the court to follow *In re Gentry,* 621 B.R. 863 (Bankr. E.D. Wis. 2020), contending that *Gentry* addresses circumstances that are "nearly identical" to this case because the court there similarly sustained the debtor's claim objection to the Department's priority claim but then denied the debtor's request to shorten the plan term. ECF No. 107, at 5–6. *Gentry*, however, did not involve the same model plan language. And *Gentry* left open the possibility that different plan terms might lead to a different result, stating, "[t]he outcome here might have been different if the debtor's confirmed plan had read differently—if, for example, it had proposed simply to pay 'all allowed § 507(a)(1)(B) priority claims' in full (or in accordance with § 1322(a)(4))." 621 B.R. at 871. Properly construed the debtors' plan in this case effectively does no more than that. It provides that it will pay the Department's claim in accordance with §1322(a)(4) to the extent that the claim is allowed and is entitled to priority under §507(a)(1)(B). Under these circumstances, as *Gentry* contemplates, §1329 permits the debtors to modify the confirmed plan to shorten the plan term because the court has determined through Rule 3012(b)'s claim-objection process that the Department's claim is not entitled to priority under §507(a)(1)(B).

　　[5] That *Hovis* involves the binding effect of a confirmed chapter 11 plan does not limit its application in this chapter 13 case. Section 1141, the Bankruptcy Code provision governing the effect of confirmation of a chapter 11 plan, states, in language materially indistinguishable from §1327(a), "the provisions of a confirmed plan bind the debtor . . . and any creditor". §1141(a). Nor is the Department correct in its contention that *Hovis*'s application of law of the case and judicial estoppel resulted from the fact that the plan in that case authorized post-confirmation claim objections. *Hovis*'s discussion of the plan setting a deadline for claim objections arose in the context of whether the debtor permissibly filed the objection. The decision states, "[s]etting dates for filing of claims, and objecting to them, is within the discretion of the bankruptcy judge. . . . The bankruptcy judge initially appeared to recognize that much. The plan of reorganization he confirmed provides" a deadline for filing claim objections. *Hovis*, 356 F.3d at 822. None of this limits *Hovis*'s direction that law of the case and judicial estoppel rather than issue preclusion apply when a party seeks to revisit an issue in the context of a subsequent proceeding in the same case. What is

*Hovis* in a chapter 13 case).

The debtors' claim objection in this case initiated a contested matter "within a unitary, ongoing" bankruptcy case akin for preclusion purposes to the claim objection in *Hovis*. *Hovis*, 356 F.3d at 822; see also Fed. R. Bankr. P. 3012(b). The debtors properly made their request to modify the plan "after confirmation of the plan but before the completion of payments under such plan," as required by §1329(a), and requested modifications allowed by §1329(a). The confirmed plan's determination that the Department's claim is entitled to priority under §507(a)(1)(B) (presumed for the sake of this discussion but shown to be incorrect above) has only the "binding" force afforded by law of the case and judicial estoppel. As the September 21 decision and order explains, those principles did not foreclose the court's adjudication of the claim objection on its merits, and, on the merits, the Department's claim is not *actually* entitled to priority under §507(a)(1)(B)—a conclusion required by *Dennis* and one that the Department has never contested in this case. See *Terrell*, 2021 WL 4304839, at *6–7. Thus, even if the Department's reading of the plan as vesting its claim with priority status were correct, the court's subsequent determination that the Department's claim is *not* entitled to priority under §507(a)(1)(B) entails that the debtor's request to shorten the plan term does not offend §1329(b)'s incorporation of §1322(a)(4)'s five-year-term requirement for plans that do not pay §507(a)(1)(B) claims in full.

### III

For these reasons, IT IS ORDERED that the debtors' motion to strike the

---

more, as discussed above, the debtors' plan also allows for the filing of post-confirmation plan objections to determine the extent to which allowed claims are entitled to priority.

The Department has additionally argued that *Hovis* is inconsistent with *Bullard v. Blue Hills Bank*, 134 S. Ct. 1686 (2015), and *Espinosa*, 559 U.S. 260. As *Gentry* explains, however, "*Hovis* is not inconsistent with either *Bullard* or *Espinosa*. In *Bullard*, the Supreme Court examined whether a particular order (an order denying confirmation of a proposed Chapter 13 plan) was 'final' and appealable for purposes of 28 U.S.C. § 158(a). And *Espinosa* concerned a creditor's challenge to a confirmed plan—brought years after the plan had been confirmed, fully performed, and the debtor discharged—on the basis that the confirmation order was void under Federal Rule of Civil Procedure Rule 60(b)(4)." *Gentry*, 621 B.R. at 867.

Department's objection to their request to modify the plan (ECF No. 109) is denied; IT IS FURTHER ORDERED that the debtors' request to modify their confirmed plan (ECF No. 67) is granted.

November 3, 2021

G. Michael Halfenger
Chief United States Bankruptcy Judge