UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Antonio Terrell and                           Case No. 18-28674-gmh
Angel Marie Terrell,                                Chapter 13

          Debtors.

## OPINION ON CERTIFICATION OF THE SEPTEMBER 21, 2021 DECISION AND ORDER FOR DIRECT REVIEW BY THE COURT OF APPEALS UNDER 28 U.S.C. §158(d)(2)

This opinion accompanies the court's certification "on its own motion" of a September 21, 2021 decision and order for direct appeal under 28 U.S.C. §158(d)(2)(A) & (B). The September 21 decision and order sustains the debtors' objection to a claim filed by the State of Wisconsin Department of Children and Families and is a final determination that the Department's claim is not entitled to priority under 11 U.S.C. §507(a)(1)(B). This opinion on certification explains why the court of appeals should allow a direct appeal of that order. See Fed. R. Bankr. P. 8006(e)(1).

### FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED

The chapter 13 debtors in this case confirmed a plan committing them to pay their monthly net disposable income to the trustee principally to pay their secured creditors through the plan but also to pay holders of a small amount of priority tax and child-support debt, as well as chapter 13 administrative expenses. The plan, which the debtors filed on the same day as their bankruptcy petition employing the court-mandated chapter 13 plan form, listed the Wisconsin Department of Children and

Families in the section addressing claims for domestic support obligations owed or assigned to a governmental entity.

Before the court confirmed the debtors' plan, the Department filed a proof of claim alleging that the debtors owed it over $29 thousand for "[p]ublic assistance overpayments" and asserting that the full amount of the claim was entitled to priority under §507(a)(1)(B). Claim 32-1, at 2–3. That assertion was consistent with the district court's ruling several years earlier that benefit-overpayment claims are entitled to priority under §507(a)(1)(B). See *Wis. Dept. of Workforce Dev. v. Ratliff*, 390 B.R. 607, 617 (E.D. Wis. 2008) ("The Department's claim for food stamp overpayments should be afforded priority status under § 507(a)(1)(B)."); see also *Wisconsin v. Schauer (In re Schauer)*, 391 B.R. 430, 431 (Bankr. E.D. Wis. 2008) (ruling that "child care overpayments are domestic support obligations within the meaning of 11 U.S.C. § 101(14A) and thus nondischargeable pursuant to 11 U.S.C. § 523(a)(5).").

Claims entitled to priority under §507(a)(1)(B)—domestic support obligations that have either been assigned to or are "owed directly to or recoverable by" a governmental entity—are excepted from discharge. See 11 U.S.C. §1328(a)(2) (excepting from discharge debts "of the kind specified in" §523(a)(5), i.e., "for a domestic support obligation"). But, unlike other claims entitled to priority under §507, a chapter 13 plan is not required to pay a claim entitled to priority under §507(a)(1)(B) in full as long as the plan requires the debtors to pay all of their "projected disposable income" into the plan for five years. 11 U.S.C. §1322(a)(4).

Against this backdrop the debtors' plan named the Department in the section applicable to holders of governmental claims entitled to §507(a)(1)(B) priority. The section's boilerplate text provides that "[t]he allowed priority claim[] . . . will be paid less than the full amount", and that plan payments would be "for a term of 60 months". ECF No. 2, at 5 (emphasis omitted). The plan further provides that the trustee will pay the Department "[a]vailable funds" after paying secured claims, other priority claims

and administrative expenses "until . . . the § 507(a)(1)(B) claim is paid in full." *Id*. Because the debtors' projected disposable income for five years was only sufficient to pay secured claims, other priority claims entitled to full payment, and administrative expenses, the plan that was initially confirmed was not sufficiently funded to make any payments to the Department or other unsecured creditors.

Two post-confirmation events changed the landscape. First, *In re Dennis*, 927 F.3d 1015 (7th Cir. 2019), held that benefit-overpayment claims, like the Department's, are not domestic support obligations entitled to priority. Second, the debtors modified their chapter 13 plan to decrease payments to the holder of a secured claim after surrendering the collateral that secured that claim.

These events led the debtors to object to the Department's claim under Federal Rule of Bankruptcy Procedure 3012(b) to request that the court order that §507(a)(1)(B) does not apply to the Department's claim. The debtors also moved under Rule 3015(h) to modify their plan to reduce the term from five years to three, as well as make other modifications of the kind allowed by §1329(a). As relevant here, a request to modify a confirmed chapter 13 plan must satisfy §1322(a)'s requirement that the plan provide for §507(a)(1)(B) priority claims by either paying the priority claim amount in full or committing the debtors to paying the trustee their "projected disposable income" for five years. 11 U.S.C. §1322(a)(4); see also 11 U.S.C. §1322(a)(2) & §1329(b)(1). Consequently, the debtors' request to modify the plan depended on the outcome of their claim objection, which the Department opposed. The Department contended that the debtors filed their objection too late because once the court confirmed the debtors' plan providing for the Department's claim as entitled to priority, the debtors could not seek a contrary determination.

The September 21 decision and order sustained the debtors' claim objection. (A copy of the September 21, 2021 decision and order is attached as exhibit A to this opinion.) It reasons that neither the Bankruptcy Code nor its implementing rules sets a

deadline for making a request that the court "determine the amount of a claim entitled to priority" under Rule 3012(b). The court further reasoned that under governing circuit precedent, the preclusive effect of an order confirming a plan on later adjudications in the same case is determined by applying the law-of-the-case and judicial-estoppel doctrines, rather than the stricter doctrine of "issue preclusion (collateral estoppel)." See *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004). The bankruptcy court concluded that a proper application of the law-of-the-case and judicial-estoppel doctrines allowed it to consider the claim objection on its merits. The Department did not defend the merits of its assertion of priority, so the court sustained the debtors' objection. *In re Terrell*, Case No. 18-28674-gmh, 2021 WL 4304839 (Bankr. E.D. Wis. Sept. 21, 2021).

After the bankruptcy court sustained the debtors' claim objection, it granted the debtors' request to modify the plan under §1329(a). A November 3, 2021 decision and order explains that the modification's reduction of the plan term and changes in the payment amounts are expressly authorized by §1329(a) and are not prohibited by §1329(b) because no amount of the Department's claim is entitled to §507(a)(1)(B) priority.

At a November 1, 2021 hearing the Department asserted its intention to appeal any order that confirmed the debtors' modified plan. The bankruptcy court expects to certify that appeal for direct review also, and the parties expressed their agreement with that course at the November 1 hearing.

### QUESTIONS PRESENTED AND RELIEF SOUGHT BY APPELLANT

The Department contends on appeal that the bankruptcy court erred in sustaining the debtors' claim objection and declaring that the Department's claim is not entitled to priority. The bankruptcy court sustained the objection after concluding that, under the applicable doctrines of law of the case and judicial estoppel, the order confirming the plan did not preclude adjudicating the merits of the debtors' claim objection based on *Dennis.*

This appeal presents the following question: Does confirmation of a chapter 13 plan listing the Department as holding a claim entitled to priority under §507(a)(1)(B) have preclusive effect that exceeds the doctrines of law of the case and judicial estoppel so as to prevent the bankruptcy court from adjudicating the debtors' post-confirmation claim objection and ruling, based on *Dennis*, that the Department's claim is not entitled to priority?

STATEMENT ON JURISDICTION

**1. Bankruptcy court's jurisdiction**. Section 1334 of title 28 gives the district court jurisdiction over the debtors' bankruptcy case and the parties' disputes that arise in that case. 28 U.S.C. §1334. Section 157(a) of title 28 authorizes the district court to refer those matters to the bankruptcy court. 28 U.S.C. §157(a). The bankruptcy court has jurisdiction over the debtors' chapter 13 bankruptcy case by operation of 28 U.S.C. §157 and the district court's order of reference to the bankruptcy court of all cases and proceedings arising in, under, or related to title 11 of the United States Code. See Order of Reference (E.D. Wis. July 16, 1984), https://www.wied.uscourts.gov/gen-orders/bankruptcy-matters (last visited November 2, 2021). The parties' dispute over the extent to which the Department's claim is entitled to priority under 11 U.S.C. §507(a)(1)(B) arises in and under title 11 and is a core proceeding under 28 U.S.C. §157(b)(2).

**2. Court of appeals' discretionary jurisdiction over the bankruptcy court's final order.** The court of appeals has permissive jurisdiction under 28 U.S.C. §158(d)(2)(A) to hear an appeal of a final bankruptcy court order if (among other alternatives) the bankruptcy court certifies that the order meets one or more of that section's criteria and the court of appeals authorizes a direct appeal:

> The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court . . . acting on its own motion . . . certif[ies] that—

> . . .
>
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;
>
> . . .
>
> and if the court of appeals authorizes the direct appeal of the . . . order . . . .

28 U.S.C. §158(d)(2)(A)(iii); see also §158(a) (affording the district court "jurisdiction to hear appeals . . . from final . . . orders . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.").

The September 21, 2021 decision and order determined that no amount of the Department's benefits-overpayment claim is entitled to priority under 11 U.S.C. §507(a)(1)(B). The order definitively resolves a controversy over the debtors' claim objection, thereby resolving an "individual controvers[y] that might exist as a standalone suit outside of bankruptcy." *Germeraad v. Powers*, 826 F.3d 962, 965 (7th Cir. 2016). Therefore, the September 21, 2021 decision and order is a final order for purposes of appeal under 28 U.S.C. §158. See *Morton v. Morton (In re Morton)*, 298 B.R. 301, 303 (B.A.P. 6th Cir. 2003). The Department timely appealed the bankruptcy court's September 21, 2021 decision and order to the district court on October 4, 2021. ECF No. 90. (A copy of the Department's notice of appeal is attached as exhibit B to this opinion.)

Under Federal Rule of Bankruptcy Procedure 8006(b), the "matter remains pending in the bankruptcy court for 30 days after the effective date" of the notice of appeal under Federal Rule of Bankruptcy Procedure 8002. As there is no pending motion under Federal Rules of Bankruptcy Procedure 7052, 9023, or 9024, the notice of appeal was effective when filed on October 4, 2021. See Fed. R. Bankr. P. 8002(a) & (b). The matter thus remained pending in the bankruptcy court through November 3, 2021, and this certification is timely.

## REASONS FOR CERTIFYING THE SEPTEMBER 21 DECISION AND ORDER FOR DIRECT REVIEW

An immediate direct appeal from the bankruptcy court's September 21 decision and order will materially advance the progress of the bankruptcy case to its definitive conclusion. The September 21 decision and order's determination that the Department's claim is not entitled to priority controls the outcome of this bankruptcy case. As the bankruptcy court's November 3 decision and order also explains, the debtors' request to shorten their plan term to three years depended on the debtors obtaining a determination that the Department's claim is not entitled to priority under §507(a)(1)(B), because if it were entitled to priority, then §1322(a)(4), made applicable to plan modifications by §1329(b), required the debtors to pay their net disposable income to the trustee for five years. (A copy of the November 3 decision is attached as exhibit C to this opinion for additional context.) As a result, after sustaining the debtors' claim objection, the bankruptcy court granted the debtors' request to modify the plan to shorten the plan term to three years. The debtors have already made three years of payments to the trustee, so the debtors will soon be eligible for discharge under §1328(a). Because the September 21 decision and order determines that the Department's claim is not a domestic support obligation, the claim will not be excepted from the court's discharge order by §1328(a)(2), which will enjoin the Department from engaging in further acts to collect that claim from the debtors. See §§524(a) and 1328(a).

If the bankruptcy court's September 21 decision and order is reversed on appeal, the order granting the debtors' request for plan modification and any later order granting them a discharge would seemingly be set aside. See Fed. R. Bankr. P. 60(b)(5) (authorizing relief from an order that "is based on an earlier judgment that has been reversed or vacated") & Fed. R. Bankr. P. 9024 (making Rule 60(b) generally applicable in bankruptcy cases). If the order granting the plan modification is vacated, the debtors will be in default of the five-year plan term and the longer the appeal is pending the less time the debtors will have to cure that default during the reinstated five-year plan term.

Even if the bankruptcy court on remand could afford the debtors additional time to cure the default, see *Germeraad*, 826 F.3d at 968, the longer the appeal remains pending the more likely the debtors will encounter difficulties in completing all required plan payments and obtaining their discharge. These circumstances support shortening the potential duration of the appeal by bypassing review in the district court.

Additionally, the Department's appeal involves questions of law more efficiently resolved by the court of appeals than by the district court. The Department's principal argument is that the bankruptcy court erred in its application of *Hovis*. 356 F.3d at 822. The bankruptcy court read *Hovis* to limit the preclusive effect of plan confirmation on later disputes in the same bankruptcy case to depend on the application of law of the case and judicial estoppel, rather than issue preclusion, and under the circumstances presented in this case, the bankruptcy court ruled that neither law of the case nor judicial estoppel barred considering the debtors' claim objection on its merits.

The Department has also argued that *Hovis*'s precedential force is undermined by *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010), and *Bullard v. Blue Hills Bank,* 135 S. Ct. 1686 (2015). While neither case limits *Hovis*'s holding, the question of reconciling these authorities is also one better answered by the court of appeals. *Espinosa* involves an effort to vacate a confirmation order after the debtor completed the plan and obtained a discharge. It holds that a chapter 13 confirmation order is "void" for purposes of Federal Rule of Civil Procedure 60(b)(4)—a rule not at issue here—only if the order "is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." 559 U.S. at 271. *Bullard* holds that "[a]n order *denying* confirmation is not final," and therefore not immediately appealable, "so long as it leaves the debtor free to propose another plan", in part because such an order "changes little", unlike confirmation which "has preclusive effect". 135 S. Ct. at 1692–93 (emphasis added). The Department would read *Bullard*'s statement that confirmation orders have "preclusive effect" to mean that those

orders are always entitled to issue-preclusion effect in tension with *Hovis*. *Hovis*, however, acknowledges that plan-confirmation orders have issue-preclusive effect when applied in subsequent cases but holds that the preclusive effect of confirmation orders on subsequent determinations in the same bankruptcy case is governed by law of the case and judicial estoppel.

The Department is also likely to argue on appeal that *Hovis*, a reorganization case under chapter 11, does not govern the preclusive effect of confirmation in this chapter 13 case. The Bankruptcy Code, however, makes plans confirmed under both chapters similarly binding on debtors and creditors. Compare 11 U.S.C. §1141(a) ("... the provisions of a confirmed plan bind the debtor ... and any creditor ....") with §1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor ...."). The Department has suggested that the plan in *Hovis* is materially different than the plan at issue here because the *Hovis* plan contemplated post-confirmation claim objections by setting a deadline for their filing. *Hovis*, however, mentions the confirmed plan's claim-objection provision to show that the "bankruptcy judge initially appeared to recognize" that "[i]t would greatly and needlessly disrupt ordinary, efficient means of reorganization to adopt a rule that all claims *must* be filed and litigated to conclusion before a plan of reorganization is confirmed." 356 F.3d at 822. The preclusion rule the Department champions would potentially yield even greater administrative challenges in the many chapter 13 cases in this district and throughout the circuit because the Bankruptcy Code calls for confirmation of the plan in the early stages of the case. See 11 U.S.C. §1324(b).

In all events, the bankruptcy court expressly reasoned that *Hovis* governs the preclusive effect of the confirmation order on the debtors' claim objection and implicitly reasoned that *Hovis* is not inconsistent with *Espinosa* or *Bullard*. Whether that reasoning is correct is best decided by the only court that can construe *Hovis* authoritatively.

Direct review is further supported by the Department's assertion that "the State

still has over *fifty* open Chapter 13 cases that this appeal could impact." ECF No. 94, at 7. Presumably the Department foresees many of these debtors filing post-confirmation claim objections to request determinations that the Department's claims are not domestic support obligations entitled to §507(a)(1)(B) priority. The Department's expectation that others are likely to follow the debtors' course suggests that a precedential decision by the court of appeals may have administrative benefits exceeding the benefits to the litigants in this case.

Finally, the parties told the bankruptcy court that they support certification of the Department's appeal of the September 21 decision and order and certification of the expected appeal of the bankruptcy court's November 3 decision and order granting the debtors' request to modify the plan. Direct review of any appeal of the November 3 decision and order would be proper for many of the same reasons stated above, and consideration of an appeal from that order would afford the court of appeals an opportunity to address the proper interpretative rules applicable to construing chapter 13 plans. As the November 3 decision and order explains, precedential decisions offer conflicting instructions on whether federal or state interpretive rules apply. Like the Department's current appeal, moreover, its expected appeal of the November 3 decision and order will involve questions of law the answers to which are of ongoing importance in administering the many cases filed under chapter 13 of the Bankruptcy Code.

### CONCLUSION AND REQUEST FOR CERTIFICATION

For these reasons, this court will enter a separate order certifying the State of Wisconsin Department of Children and Families' appeal of the September 21, 2021 decision and order for direct appeal to the court of appeals under 28 U.S.C. §158(d)(2) and Federal Rule of Bankruptcy Procedure 8006(e).

November 3, 2021

G. Michael Halfenger
United States Bankruptcy Judge

# Exhibit A

The bankruptcy court's September 21, 2021 decision and order

So Ordered.

Dated: September 21, 2021



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Antonio Terrell and                    Case No. 18-28674-gmh
Angel Marie Terrell,                    Chapter 13

        Debtors.

**DECISION AND ORDER**

Nearly two years after the court confirmed the debt-adjustment plan in this case, the debtors objected to a claim filed by the State of Wisconsin Department of Children and Families. The claim objection requests a determination that the Department's claim is not entitled to priority under 11 U.S.C. §507(a)(1)(B). ECF No. 75. The Department responds that the objection comes too late because the confirmed plan provides for its claim as entitled to priority under §507(a)(1)(B). For the following reasons, the objection is sustained, and the Department's claim is declared to be not entitled to priority.

I

The court confirmed debtors Antonio and Angel Terrell's chapter 13 plan in February 2019. ECF Nos. 2, 42 & 45. The confirmed plan provided that the debtors

would pay the trustee an amount approximately equal to their projected disposable income for 60 months. These payments about matched the amount the plan required the trustee to pay for administrative expenses, to creditors who held claims secured by the debtors' vehicles, and on priority tax claims. If any funds remained after paying these claims, the plan provided for payment of the Department's "allowed priority claim[ ] . . . based on a domestic support obligation . . . owed or assigned to a governmental unit as provided by 11 U.S.C. §507(a)(1)(B)". ECF No. 2, at 5. The plan further states that the Department "will be paid less than the full amount of the claim under 11 U.S.C. §1322(a)(4)", a statutory provision that authorizes a chapter 13 plan to pay less than the full amount of a claim entitled to priority under §507(a)(1)(B) if the plan requires the debtor to pay all projected disposable income into the plan for 5 years.

The debtors' inclusion of the Department's claim in the plan section providing for §507(a)(1)(B) claims accords with the Department's proof of claim, which states that the debtors owe it nearly $30 thousand in "[p]ublic assistance overpayments for Child Care and FoodShare" and that the claim is entitled to priority under §507(a)(1)(B) in the full amount. Claim No. 32, at 2–3.

After the court confirmed the plan the Seventh Circuit held in *In re Dennis* that a claim for a debt arising from overpayment of public assistance benefits is *not* entitled to priority under §507(a)(1)(B). 927 F.3d 1015 (7th Cir. 2019). Seeing in *Dennis* a basis to contest the Department's assertion of priority as a precursor to modifying the plan to reduce the time over which they must make monthly plan payments, the debtors objected to the Department's claim.

## II

## A

Two potentially dispositive issues can be quickly dispensed with (because they are not, or cannot be, seriously contested): First, there is no need to consider in detail whether the Department's claim is entitled to priority under §507. The Department does

not challenge the debtors' assertion that under *Dennis* its claim—for "a debt owed to the government for the overpayment of benefits"—is not entitled to priority under §507(a)(1)(B). See 927 F.3d at 1017–18. And the Department does not argue that its claim is otherwise entitled to priority under §507.

Second, no applicable statute or rule sets a deadline on requests to determine the amount of a claim entitled to priority under §507. The Department also does not contest this. Its position is, instead, that plan confirmation (either generally or due to the specific provisions of the plan in this case) established that its claim *is* entitled to priority under §507(a)(1)(B), and even if that was an error, the debtors cannot now "seek to reclassify the . . . claim from priority to general unsecured." ECF No. 77, at 5.

B

This brings us to the crux of the parties' dispute: Does the debtors' claim objection come too late because the confirmed plan provides for the Department's claim as one entitled to priority under §507(a)(1)(B)?

1

Section 1327(a) of the Bankruptcy Code states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a). The debtors' confirmed plan lists the Department's claim in section 4.5, which states in relevant part as follows:

> The allowed priority claims listed below are based on a domestic support obligation that is owed or assigned to a governmental unit as provided by 11 U.S.C. § 507(a)(1)(B) and will be paid less than the full amount of the claim under 11 U.S.C. § 1322(a)(4). If the *Available funds to creditors in Parts 3 and 4* box is selected, then there should be no distribution to nonpriority unsecured creditors in Part 5 until or unless the § 507(a)(1)(B) claim is paid in full. *This plan provision requires that payments in § 2.1 be for a term of 60 months*; see 11 U.S.C. § 1322(a)(4).

| Name of Creditor | Amount of claim to be paid |
|---|---|
| | ☑ Available funds after creditors in Parts 3 and 4 are paid |
| | ☐ $ ___ |
| Department of Children and Families | ☐ Percent of claim ___% |

ECF No. 2, at 5.

The plan thus provides for the Department's claim as one entitled to priority under §507(a)(1)(B). This provision governs the debtors' and the Department's rights and obligations under the confirmed plan—that's the effect of §1327(a)—and any alteration of those rights and obligations requires a request to modify the confirmed plan under 11 U.S.C. §1329. Section 1329 authorizes the debtor, as well as the trustee and any holder of an allowed unsecured claim, to modify a plan after it is confirmed but before the completion of plan payments to "reduce the amount of payments on claims of a particular class provided for by the plan" or "reduce the time for such payments", among other things. §1329(a)(1) & (2). The debtors have moved under §1329 to modify the plan to shorten the plan term. The trustee (but not the Department) objected that the modification is impermissible because the plan as modified would not pay the Department's §507(a)(1)(B) claim in full *or* require the debtors to pay their disposable income for a full 5 years. See §1329(b)(1) (applying the plan-composition requirements of §1322(a) & (b) and the plan-confirmation requirements of 11 U.S.C. §1325(a) to requests to modify a confirmed plan). In response, the debtors objected to the Department's claim seeking a determination that the Department's claim is not entitled to priority under §507(a)(1)(B).

2

The Department's principal brief argues that a confirmed plan has preclusive effect that goes beyond the plan's operation to foreclose any determination that is

inconsistent with the plan's terms:

> "[O]nce a bankruptcy plan is confirmed, its terms are not subject to collateral attack." *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) (debtor barred from challenging proof of claim after confirmation) . . . . Allowing a debtor to later challenge an issue that the debtor could have raised at the confirmation hearing "destroy[s] the finality that bankruptcy confirmation is intended to provide." [*Id.*] at 895.

ECF No. 77, at 2–3. The Department's reply brief continues this theme:

> "It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan." *In re Harvey*, 213 F.3d [318, ]321 [(7th Cir. 2000)] (citing to section 1327 and other authorities). When a debtor expressly provides for a claim in the plan, as the Debtors did here with DCF's priority claim, section 1327 effectively allows the claim upon confirmation and bars any subsequent attempt to change the terms.

ECF No. 85, at 4–5. The Department reads too much into *Adair* and *Harvey*.

Orders confirming chapter 13 plans are unquestionably appealable "final orders" for purposes of 28 U.S.C. §158(a)(1). See *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1691–94 (2015). Unlike final orders in ordinary civil litigation, however, orders confirming chapter 13 plans do not bring an end to all proceedings in the bankruptcy case. "A bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Id.* at 1692 (quoting 1 *Collier on Bankruptcy* ¶5.08[1][b] (16th ed.)). Confirmation is one such individual controversy—one that typically precedes many others.

Section 1324 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure call for confirmation of the plan in the early stages of a chapter 13 case. Under §1324(b) and Rule 2003(a) the confirmation hearing is contemplated to occur as early as 41 days after the date on which the debtor files the bankruptcy case. See 11 U.S.C. §301(b) ("The commencement of a voluntary case under a chapter of [the Bankruptcy Code] constitutes an order for relief under such chapter."); Fed. R. Bankr.

P. 2003(a) ("In a chapter 13 . . . case, the United States trustee shall call a meeting of creditors to be held no fewer than 21 days and no more than 50 days after the order for relief."); 11 U.S.C. §1324(b) ("The hearing on confirmation of the plan may be held not earlier than 20 days and not later than 45 days after the date of the meeting of creditors . . . ."); see also *id.* §303(a) ("An *involuntary* case may be commenced only under chapter 7 or 11 of this title . . . ." (Emphasis added.)). In comparison to the short timeline that is contemplated for confirmation, creditors have at least 70 days after the date on which the debtor files the case to file a proof of claim. Fed. R. Bankr. P. 3002(c). And governmental units—frequent filers of proofs of claim alleging priority—have 180 days to file proofs of claim. 11 U.S.C. §502(b)(9)(A) & Fed. R. Bankr. P. 3002(c)(1). Because the Code requires that a chapter 13 plan pay most classes of claims entitled to priority in full, see §1322(a)(2), a challenge to the amount of a claim entitled to priority may of necessity need to be raised and resolved long after confirmation. See Fed. R. Bankr. P. 3012(b) ("A request to determine the amount of a claim entitled to priority may be made only by motion *after a claim is filed or in a claim objection*." (Emphasis added.)). As observed earlier, neither the Bankruptcy Code nor the Bankruptcy Rules sets a deadline for claim objections—another indication that the claims adjudication process may proceed apart from and after plan confirmation when that process is not needed to determine whether the court may confirm the debtor's plan.

The absence of any requirement that claim objections be adjudicated before confirmation serves a practical end. Objections to claim priority or allowance may be pointless until the debtor makes sufficient post-confirmation payments to the trustee to make a distribution to unsecured creditors imminent or at least likely. Before then, trustee and court resources available to administer these high-volume cases are typically better spent elsewhere. See *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004) (noting, in the context of a chapter 11 case, that "[i]t would greatly and needlessly disrupt ordinary, efficient means of reorganization to adopt a rule that all claims *must* be filed

and litigated to conclusion before a plan of reorganization is confirmed").

This case is illustrative. When the court confirmed the debtors' plan the record did not suggest that the debtors would be able to pay the trustee sufficient funds to make any payments on the Department's claim during the five-year plan term. The debtors' projected disposable income was only sufficient to fund payments to the holders of secured creditors, priority claims statutorily required to be paid in full, and administrative expenses. About five months after plan confirmation, however, the debtors requested modification of the plan to surrender a vehicle and cease payments to the holder of a claim secured by it. ECF Nos. 47, at 2. This unopposed modification gave rise to the possibility that the 60-month plan would be sufficiently funded to pay the holders of unsecured claims. Only then did the issue of whether the Department's claim is entitled to priority have practical significance: If the claim is entitled to priority under §507(a)(1)(B), as the Department asserts, then the Department will receive all of the funds the plan requires the trustee to pay to the holders of allowed unsecured claims until its claim is paid in full. If not, then the Department will have to share those funds pro rata with the holders of other allowed unsecured claims.

A debtor seeking to demonstrate that an alleged priority debt is dischargeable is also likely to wait to contest claim priority until after plan confirmation. Chapter 13 excepts from discharge any debt for a domestic support obligation—the linchpin of the Department's assertion of §507(a)(1)(B) priority that was removed by *Dennis*, 927 F.3d at 1017–18 (holding that benefit overpayments are not domestic support obligations). 11 U.S.C. §1328(a)(2) (excepting from discharge "any debt . . . of the kind specified in . . . paragraph . . . (5) . . . of section 523(a)"); §1328(c)(2) (excepting from discharge under §1328(b) "any debt . . . of a kind specified in section 523(a) of this title"); *id.* §523(a)(5) (specifying debts "for . . . domestic support obligation[s]"). To be eligible for a discharge, a chapter 13 debtor must either complete all payments under the plan, §1328(a), or demonstrate all of the following: the failure to make all such payments is

"due to circumstances for which the debtor should not justly be held accountable", the debtor has paid at least as much "under the plan on account of each allowed unsecured claim" as "would have been paid on such claim if the estate . . . had been liquidated under chapter 7", and it "is not practicable" to modify the plan under §1329, §1328(b). So, even when a debtor might be able to discharge a debt owed to a creditor that has erroneously claimed that its debt is entitled to priority status, it is often not sensible for the debtor to file an objection until well after plan confirmation.

The economic realities of claim adjudication in the context of individual debt adjustment under chapter 13, as shown by the circumstances of this case, thus weigh heavily against judicial creation of a rule under which a confirmed plan's treatment of a claim necessarily forecloses all later disputes over the allowance or priority status of that claim—a rule that, while championed by the Department, is absent from the text of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

3

The conclusion that plan confirmation does not foreclose later adjudication of claim priority or allowance does not entail that the confirmation order lacks preclusive effect. The extent to which an order confirming a plan forecloses adjudication of claim priority depends on application of law-of-the-case principles and judicial estoppel, as the Seventh Circuit made clear in *Hovis*, 356 F.3d at 822. See also *In re Gentry (Gentry II)*, 621 B.R. 863, 866–69 (Bankr. E.D. Wis. 2020) (applying *Hovis* in a chapter 13 case).

*Hovis* concerns a debtor's post-confirmation challenge to allowance of a claim in a chapter 11 case where the plan provided for claim adjudication after confirmation, not a challenge to the priority of an allowed claim in a chapter 13 case, but it addresses a similar issue under roughly analogous circumstances to those here. In *Hovis* the debtor listed a creditor's claim in his schedules, the creditor filed a proof of claim for about the same amount before the plan was confirmed, and the debtor objected to the claim after confirmation. The bankruptcy court and district court overruled the claim objection,

reasoning that confirmation of the plan foreclosed adjudicating the debtor's objection to the claim, citing *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000). Reversing the lower courts, the Seventh Circuit held that plan confirmation does not ordinarily foreclose claim adjudication. The court cabined *Adair* to sequential cases governed by the "normal application of preclusion", stating that "*Adair* and similar decisions that arise from sequential suits are irrelevant within one suit". 356 F.3d at 822. "What matter within a single suit", apart from any "deadlines set by statute and rule", are "the law of the case and judicial estoppel." *Id.*; see also *Gentry II*, 621 B.R. at 866–69; *In re Smith*, No. 06-20127, 2007 WL 1544366, at *13 (Bankr. E.D. Wis. May 29, 2007), aff'd sub nom. *Nissan Motor Acceptance Corp. v. Smith*, 07-C-0698, 2010 WL 4005056 (E.D. Wis. Oct. 12, 2010) ("The debtor's [claim] objection in this case does not constitute a 'collateral action'—he has raised this objection in the same case.").

Again, the debtors' request that the court decide whether the Department's claim is entitled to priority is not foreclosed by any rule or Code provision, and the Department does not suggest otherwise. The Department argues that the confirmed plan provides that its claim is entitled to priority under §507(a)(1)(B), a confirmed chapter 13 plan can only be modified as permitted by §1329, and §1329 "does not authorize a debtor to reclassify a claim" as not entitled to priority. ECF No. 77, at 5–6. This claim-objection dispute, though, is not about whether the debtors can modify the confirmed plan; it is about whether the court can determine that the Department's claim is not entitled to priority. That request is properly made in a claim objection under Rule 3012(a)(2) asking the court to "determine . . . the amount of a claim entitled to priority under § 507". See also Fed. R. Bankr. P. 3012(b) ("A request to determine the amount of a claim entitled to priority may be made only by motion after a claim is filed *or in a claim objection*." (Emphasis added.)). Thus, contrary to the Department's contentions, §1329 has no particular bearing on the debtors' request to determine the non-priority status of its claim. Again, absent an applicable statute or rule, law of the

case and judicial-estoppel principles govern the preclusive effect of any determination that the Department's claim is entitled to priority that results from plan confirmation. See *Gentry II*, 621 B.R. at 866–69.

a

"[T]he law of the case doctrine is discretionary rather than mandatory." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 710 (7th Cir. 2016), opinion modified on reh'g, 832 F.3d 699 (7th Cir. 2016). As *Boyer* makes clear, the doctrine typically applies to require a bankruptcy court to conform rulings on later-contested matters—for example, claim adjudications—with earlier rulings unless there is "good cause" to do otherwise. *Id.* at 710–11. Even assuming that confirmation of the debtors' chapter 13 plan constitutes a "ruling" on the priority of the Department's claim, among the potential good reasons to depart from an earlier ruling is an "intervening change in the law[]". *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993); see also *Boyer*, 824 F.3d at 711 ("[A]s this rationale suggests, [the law-of-the-case doctrine] does not prohibit a court from revisiting an issue when there is a legitimate reason to do so, whether it be a change in circumstances, new evidence, or something the court overlooked earlier."); & *Choi v. Tower Research Capital LLC*, 2 F.4th 10, 21 (2d Cir. 2021) (quoting *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009)) ("Cogent and compelling reasons justifying a departure from the law of the case may include 'an intervening change in law, availability of new evidence, or "the need to correct a clear error or prevent manifest injustice."'").

When the debtors proposed and confirmed their plan the Department's assertion of priority status was supported by decisions from the District Court and this court. See *Wis. Dep't of Workforce Dev. v. Ratliff*, 390 B.R. 607, 617 (E.D. Wis. 2008) (holding that a claim "for food stamp overpayments" was entitled to priority under §507(a)(1)(B)); & *Wisconsin v. Schauer (In re Schauer)*, 391 B.R. 430, 431 (Bankr. E.D. Wis. 2008) (ruling that "child care overpayments are domestic support obligations within the meaning of

11 U.S.C. §101(14A) and thus nondischargeable pursuant to 11 U.S.C. §523(a)(5)"). Even if the Seventh Circuit's contrary decision in *Dennis* did not "change the law," because *Ratliff* and *Schauer* are not precedential, *Dennis* creates a circumstance that militates against applying law of the case to defeat the debtors' claim objection.

*Dennis*'s holding entails that the Department's assertion of priority is incorrect, and the Department makes no effort to contend otherwise. So, even if confirmation of the plan constitutes a "determination" that the claim is entitled to priority, *Dennis* renders that determination clearly erroneous, and under these circumstances, using the law-of-the-case doctrine to foreclose adjudicating whether the claim is entitled to priority threatens to work a manifest injustice—foreclosing the debtors' ability to discharge the claim after completing the plan. See *Pepper v. United States*, 562 U.S. 476, 506–07 (2011) (Law of the case "does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'" (alteration in original) (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997))); see also *Gentry II*, 621 B.R. at 867 ("[I]ntervening case law provided a basis to revisit the priority status of the State's claim."); *In re Gentry* (*Gentry I*), No. 15-20990, 2020 WL 2479662, at *4 (Bankr. E.D. Wis. May 13, 2020) ("Now that intervening, controlling caselaw means that our own 'district precedent' (*In re Ratliff*) is in error, this Court is bound to follow *In re Dennis*, and will do so here, as Mr. Gentry's case is still open."). Under these circumstances, the law-of-the-case doctrine does not require overruling the debtors' claim objection.

b

The Department does not invoke judicial estoppel by name, but it suggests application of the doctrine, asserting that confirmation of the plan depended on its claim being entitled to priority under §507(a)(1)(B) so the debtors' current arguments to the contrary are foreclosed. Judicial estoppel is inapplicable.

Judicial estoppel serves "'to protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of

the moment.'" *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (citations omitted) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982); *United States v. McCaskey*, 9 F. 3d 368, 378 (5th Cir. 1993)).

> [T]hree factors typically inform a court as to whether to apply the doctrine: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent opposition in a later proceeding would create the perception that either the first or second court was misled"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 643 (Bankr. N.D. Ill. 2019) (quoting *In re Knight-Celotex, LLC*, 695 F.3d 714, 721–22 (7th Cir. 2012)); see also *Zedner v. United States*, 547 U.S. 489, 504 (2006). Ultimately, though, "[b]ecause the rule is intended to prevent 'improper use of judicial machinery', judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire*, 532 U.S. at 750 (citations omitted) (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

The Department has not shown a convincing reason to apply judicial estoppel to foreclose the debtors' claim objection. Confirmation of the plan did not depend on an adjudication of the priority of the Department's claim under §507(a)(1)(B) because when the plan was confirmed, it appeared that no funds would be available for payments to the holders of any allowed unsecured claims, so whether the Department's claim was entitled to priority under §507(a)(1)(B) had no consequence. As explained in *Hovis*, a plan's promise to pay a claim does not warrant application of judicial estoppel unless the plan's treatment of the claim was litigated in connection with confirmation or confirmation depended on the accuracy of that treatment:

> If confirmation of the plan depended on [a] . . . claim being *correct*, then judicial estoppel might block a post-confirmation effort to deny the claim's

validity. . . . Yet the parties did not debate the accuracy of the . . . claim at the confirmation hearing (so Hovis did not prevail on any theory about the claim's value), and a plan promising to pay all valid claims need not imply that any given claim *is* valid to the full extent of the creditor's demand.

356 F.3d at 823. Here, the parties did not debate the priority of the claim before confirmation, and confirmation clearly did not depend on the Department's claim being entitled to priority. What is more, the Department, which concedes that its claim is *not* entitled to priority under §507(a)(1)(B), is not well positioned to argue that the debtors stand to gain an *unfair* advantage from such a determination. The debtors are therefore not judicially estopped from objecting to the Department's assertion of priority.

### III

For the foregoing reasons, IT IS ORDERED that:

1. The debtors' claim objection is sustained, and the Department's claim is determined to *not* be entitled to priority under §507 in any amount.

2. Unless following this determination the trustee withdraws her objection to the debtors' pending request to modify the plan, the trustee must file, by no later than **October 12, 2021**, a brief that explains, in detail, all remaining bases for her objection to the modification; the debtors must file a response brief by no later than **October 28, 2021**.

#####

## Exhibit B

The Department's notice of appeal of the bankruptcy court's
September 21, 2021 decision and order

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Chapter: 13 |
| Antonio and Angel Marie Terrell | Case No: 18-28674-gmh |
| Debtor. | |

NOTICE OF APPEAL AND
STATEMENT OF ELECTION

## Part 1: Identify the appellant(s)

1.      Name of appellant: **State of Wisconsin**

2.      Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

> **This is an appeal from the bankruptcy case, not an adversary proceeding. The appellant is a creditor in that case.**

## Part 2: Identify the subject of this appeal

3.      Describe the judgment, order, or decree appealed from:

> **The appellant appeals from the Court's Decision and Order Sustaining Debtors' Objection to [appellant's] claim. (Dkt. 88.) See Attached.**

4.      State the date on which the judgment, order, or decree was entered:

> **September 21, 2021**

## Part 3: Identify the other parties to the appeal

**List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):**

5.      Debtors:  Antonio and          Attorney:  Michael J. Watton
        Angel Marie Terrel             301 West Wisconsin Avenue 5th Floor
                                       Milwaukee, WI 53203

        Creditor: State of Wisconsin   Attorney: Michael Morris
        Department of Children and     Wisconsin Department of Justice
        Families                       17 W. Main St.
                                       Madison, WI 53707

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

         N/A

**Part 5: Sign below**

                             JOSHUA L. KAUL
                             Attorney General of Wisconsin

                             Electronically signed by:

                             <u>s/ Michael D. Morris</u>
                             MICHAEL D. MORRIS
                             Assistant Attorney General
                             State Bar #1112934

                             Attorneys for State of Wisconsin Department
                             of Children and Families

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-3936
(608) 294-2907 (Fax)
morrismd@doj.state.wi.us

## CERTIFICATE OF SERVICE

I certify that on the below date I caused to be served via the ECF system a copy of this Wisconsin Department of Children and Families' Notice of Appeal and Statement of Election on the parties who are registered to receive ECF notification in this case.

Dated: October 4, 2021

s/Michael D. Morris
MICHAEL D. MORRIS
Assistant Attorney General

So Ordered.

Dated: September 21, 2021



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Antonio Terrell and             Case No. 18-28674-gmh
    Angel Marie Terrell,                  Chapter 13

         Debtors.

## DECISION AND ORDER

Nearly two years after the court confirmed the debt-adjustment plan in this case, the debtors objected to a claim filed by the State of Wisconsin Department of Children and Families. The claim objection requests a determination that the Department's claim is not entitled to priority under 11 U.S.C. §507(a)(1)(B). ECF No. 75. The Department responds that the objection comes too late because the confirmed plan provides for its claim as entitled to priority under §507(a)(1)(B). For the following reasons, the objection is sustained, and the Department's claim is declared to be not entitled to priority.

I

The court confirmed debtors Antonio and Angel Terrell's chapter 13 plan in February 2019. ECF Nos. 2, 42 & 45. The confirmed plan provided that the debtors

would pay the trustee an amount approximately equal to their projected disposable income for 60 months. These payments about matched the amount the plan required the trustee to pay for administrative expenses, to creditors who held claims secured by the debtors' vehicles, and on priority tax claims. If any funds remained after paying these claims, the plan provided for payment of the Department's "allowed priority claim[ ] . . . based on a domestic support obligation . . . owed or assigned to a governmental unit as provided by 11 U.S.C. §507(a)(1)(B)". ECF No. 2, at 5. The plan further states that the Department "will be paid less than the full amount of the claim under 11 U.S.C. §1322(a)(4)", a statutory provision that authorizes a chapter 13 plan to pay less than the full amount of a claim entitled to priority under §507(a)(1)(B) if the plan requires the debtor to pay all projected disposable income into the plan for 5 years.

The debtors' inclusion of the Department's claim in the plan section providing for §507(a)(1)(B) claims accords with the Department's proof of claim, which states that the debtors owe it nearly $30 thousand in "[p]ublic assistance overpayments for Child Care and FoodShare" and that the claim is entitled to priority under §507(a)(1)(B) in the full amount. Claim No. 32, at 2–3.

After the court confirmed the plan the Seventh Circuit held in *In re Dennis* that a claim for a debt arising from overpayment of public assistance benefits is *not* entitled to priority under §507(a)(1)(B). 927 F.3d 1015 (7th Cir. 2019). Seeing in *Dennis* a basis to contest the Department's assertion of priority as a precursor to modifying the plan to reduce the time over which they must make monthly plan payments, the debtors objected to the Department's claim.

II

A

Two potentially dispositive issues can be quickly dispensed with (because they are not, or cannot be, seriously contested): First, there is no need to consider in detail whether the Department's claim is entitled to priority under §507. The Department does

not challenge the debtors' assertion that under *Dennis* its claim—for "a debt owed to the government for the overpayment of benefits"—is not entitled to priority under §507(a)(1)(B). See 927 F.3d at 1017–18. And the Department does not argue that its claim is otherwise entitled to priority under §507.

Second, no applicable statute or rule sets a deadline on requests to determine the amount of a claim entitled to priority under §507. The Department also does not contest this. Its position is, instead, that plan confirmation (either generally or due to the specific provisions of the plan in this case) established that its claim *is* entitled to priority under §507(a)(1)(B), and even if that was an error, the debtors cannot now "seek to reclassify the . . . claim from priority to general unsecured." ECF No. 77, at 5.

## B

This brings us to the crux of the parties' dispute: Does the debtors' claim objection come too late because the confirmed plan provides for the Department's claim as one entitled to priority under §507(a)(1)(B)?

## 1

Section 1327(a) of the Bankruptcy Code states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a). The debtors' confirmed plan lists the Department's claim in section 4.5, which states in relevant part as follows:

> The allowed priority claims listed below are based on a domestic support obligation that is owed or assigned to a governmental unit as provided by 11 U.S.C. § 507(a)(1)(B) and will be paid less than the full amount of the claim under 11 U.S.C. § 1322(a)(4). If the *Available funds to creditors in Parts 3 and 4* box is selected, then there should be no distribution to nonpriority unsecured creditors in Part 5 until or unless the § 507(a)(1)(B) claim is paid in full. *This plan provision requires that payments in § 2.1 be for a term of 60 months*; see 11 U.S.C. § 1322(a)(4).

| Name of Creditor | Amount of claim to be paid |
|---|---|
| | ☑ Available funds after creditors in Parts 3 and 4 are paid |
| | ☐ $ ___ |
| Department of Children and Families | ☐ Percent of claim ___% |

ECF No. 2, at 5.

The plan thus provides for the Department's claim as one entitled to priority under §507(a)(1)(B). This provision governs the debtors' and the Department's rights and obligations under the confirmed plan—that's the effect of §1327(a)—and any alteration of those rights and obligations requires a request to modify the confirmed plan under 11 U.S.C. §1329. Section 1329 authorizes the debtor, as well as the trustee and any holder of an allowed unsecured claim, to modify a plan after it is confirmed but before the completion of plan payments to "reduce the amount of payments on claims of a particular class provided for by the plan" or "reduce the time for such payments", among other things. §1329(a)(1) & (2). The debtors have moved under §1329 to modify the plan to shorten the plan term. The trustee (but not the Department) objected that the modification is impermissible because the plan as modified would not pay the Department's §507(a)(1)(B) claim in full *or* require the debtors to pay their disposable income for a full 5 years. See §1329(b)(1) (applying the plan-composition requirements of §1322(a) & (b) and the plan-confirmation requirements of 11 U.S.C. §1325(a) to requests to modify a confirmed plan). In response, the debtors objected to the Department's claim seeking a determination that the Department's claim is not entitled to priority under §507(a)(1)(B).

2

The Department's principal brief argues that a confirmed plan has preclusive effect that goes beyond the plan's operation to foreclose any determination that is

inconsistent with the plan's terms:

> "[O]nce a bankruptcy plan is confirmed, its terms are not subject to collateral attack." *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) (debtor barred from challenging proof of claim after confirmation) . . . . Allowing a debtor to later challenge an issue that the debtor could have raised at the confirmation hearing "destroy[s] the finality that bankruptcy confirmation is intended to provide." [*Id.*] at 895.

ECF No. 77, at 2–3. The Department's reply brief continues this theme:

> "It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan." *In re Harvey*, 213 F.3d [318, ]321 [(7th Cir. 2000)] (citing to section 1327 and other authorities). When a debtor expressly provides for a claim in the plan, as the Debtors did here with DCF's priority claim, section 1327 effectively allows the claim upon confirmation and bars any subsequent attempt to change the terms.

ECF No. 85, at 4–5. The Department reads too much into *Adair* and *Harvey*.

Orders confirming chapter 13 plans are unquestionably appealable "final orders" for purposes of 28 U.S.C. §158(a)(1). See *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1691–94 (2015). Unlike final orders in ordinary civil litigation, however, orders confirming chapter 13 plans do not bring an end to all proceedings in the bankruptcy case. "A bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Id*. at 1692 (quoting 1 *Collier on Bankruptcy* ¶5.08[1][b] (16th ed.)). Confirmation is one such individual controversy—one that typically precedes many others.

Section 1324 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure call for confirmation of the plan in the early stages of a chapter 13 case. Under §1324(b) and Rule 2003(a) the confirmation hearing is contemplated to occur as early as 41 days after the date on which the debtor files the bankruptcy case. See 11 U.S.C. §301(b) ("The commencement of a voluntary case under a chapter of [the Bankruptcy Code] constitutes an order for relief under such chapter."); Fed. R. Bankr.

P. 2003(a) ("In a chapter 13 . . . case, the United States trustee shall call a meeting of creditors to be held no fewer than 21 days and no more than 50 days after the order for relief."); 11 U.S.C. §1324(b) ("The hearing on confirmation of the plan may be held not earlier than 20 days and not later than 45 days after the date of the meeting of creditors . . . ."); see also *id.* §303(a) ("An *involuntary* case may be commenced only under chapter 7 or 11 of this title . . . ." (Emphasis added.)). In comparison to the short timeline that is contemplated for confirmation, creditors have at least 70 days after the date on which the debtor files the case to file a proof of claim. Fed. R. Bankr. P. 3002(c). And governmental units—frequent filers of proofs of claim alleging priority—have 180 days to file proofs of claim. 11 U.S.C. §502(b)(9)(A) & Fed. R. Bankr. P. 3002(c)(1). Because the Code requires that a chapter 13 plan pay most classes of claims entitled to priority in full, see §1322(a)(2), a challenge to the amount of a claim entitled to priority may of necessity need to be raised and resolved long after confirmation. See Fed. R. Bankr. P. 3012(b) ("A request to determine the amount of a claim entitled to priority may be made only by motion *after a claim is filed or in a claim objection*." (Emphasis added.)). As observed earlier, neither the Bankruptcy Code nor the Bankruptcy Rules sets a deadline for claim objections—another indication that the claims adjudication process may proceed apart from and after plan confirmation when that process is not needed to determine whether the court may confirm the debtor's plan.

The absence of any requirement that claim objections be adjudicated before confirmation serves a practical end. Objections to claim priority or allowance may be pointless until the debtor makes sufficient post-confirmation payments to the trustee to make a distribution to unsecured creditors imminent or at least likely. Before then, trustee and court resources available to administer these high-volume cases are typically better spent elsewhere. See *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004) (noting, in the context of a chapter 11 case, that "[i]t would greatly and needlessly disrupt ordinary, efficient means of reorganization to adopt a rule that all claims *must* be filed

and litigated to conclusion before a plan of reorganization is confirmed").

This case is illustrative. When the court confirmed the debtors' plan the record did not suggest that the debtors would be able to pay the trustee sufficient funds to make any payments on the Department's claim during the five-year plan term. The debtors' projected disposable income was only sufficient to fund payments to the holders of secured creditors, priority claims statutorily required to be paid in full, and administrative expenses. About five months after plan confirmation, however, the debtors requested modification of the plan to surrender a vehicle and cease payments to the holder of a claim secured by it. ECF Nos. 47, at 2. This unopposed modification gave rise to the possibility that the 60-month plan would be sufficiently funded to pay the holders of unsecured claims. Only then did the issue of whether the Department's claim is entitled to priority have practical significance: If the claim is entitled to priority under §507(a)(1)(B), as the Department asserts, then the Department will receive all of the funds the plan requires the trustee to pay to the holders of allowed unsecured claims until its claim is paid in full. If not, then the Department will have to share those funds pro rata with the holders of other allowed unsecured claims.

A debtor seeking to demonstrate that an alleged priority debt is dischargeable is also likely to wait to contest claim priority until after plan confirmation. Chapter 13 excepts from discharge any debt for a domestic support obligation—the linchpin of the Department's assertion of §507(a)(1)(B) priority that was removed by *Dennis*, 927 F.3d at 1017–18 (holding that benefit overpayments are not domestic support obligations). 11 U.S.C. §1328(a)(2) (excepting from discharge "any debt . . . of the kind specified in . . . paragraph . . . (5) . . . of section 523(a)"); §1328(c)(2) (excepting from discharge under §1328(b) "any debt . . . of a kind specified in section 523(a) of this title"); *id.* §523(a)(5) (specifying debts "for . . . domestic support obligation[s]"). To be eligible for a discharge, a chapter 13 debtor must either complete all payments under the plan, §1328(a), or demonstrate all of the following: the failure to make all such payments is

"due to circumstances for which the debtor should not justly be held accountable", the debtor has paid at least as much "under the plan on account of each allowed unsecured claim" as "would have been paid on such claim if the estate . . . had been liquidated under chapter 7", and it "is not practicable" to modify the plan under §1329, §1328(b). So, even when a debtor might be able to discharge a debt owed to a creditor that has erroneously claimed that its debt is entitled to priority status, it is often not sensible for the debtor to file an objection until well after plan confirmation.

The economic realities of claim adjudication in the context of individual debt adjustment under chapter 13, as shown by the circumstances of this case, thus weigh heavily against judicial creation of a rule under which a confirmed plan's treatment of a claim necessarily forecloses all later disputes over the allowance or priority status of that claim—a rule that, while championed by the Department, is absent from the text of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

3

The conclusion that plan confirmation does not foreclose later adjudication of claim priority or allowance does not entail that the confirmation order lacks preclusive effect. The extent to which an order confirming a plan forecloses adjudication of claim priority depends on application of law-of-the-case principles and judicial estoppel, as the Seventh Circuit made clear in *Hovis*, 356 F.3d at 822. See also *In re Gentry (Gentry II)*, 621 B.R. 863, 866–69 (Bankr. E.D. Wis. 2020) (applying *Hovis* in a chapter 13 case).

*Hovis* concerns a debtor's post-confirmation challenge to allowance of a claim in a chapter 11 case where the plan provided for claim adjudication after confirmation, not a challenge to the priority of an allowed claim in a chapter 13 case, but it addresses a similar issue under roughly analogous circumstances to those here. In *Hovis* the debtor listed a creditor's claim in his schedules, the creditor filed a proof of claim for about the same amount before the plan was confirmed, and the debtor objected to the claim after confirmation. The bankruptcy court and district court overruled the claim objection,

reasoning that confirmation of the plan foreclosed adjudicating the debtor's objection to the claim, citing *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000). Reversing the lower courts, the Seventh Circuit held that plan confirmation does not ordinarily foreclose claim adjudication. The court cabined *Adair* to sequential cases governed by the "normal application of preclusion", stating that "*Adair* and similar decisions that arise from sequential suits are irrelevant within one suit". 356 F.3d at 822. "What matter within a single suit", apart from any "deadlines set by statute and rule", are "the law of the case and judicial estoppel." *Id.*; see also *Gentry II*, 621 B.R. at 866–69; *In re Smith*, No. 06-20127, 2007 WL 1544366, at *13 (Bankr. E.D. Wis. May 29, 2007), aff'd sub nom. *Nissan Motor Acceptance Corp. v. Smith*, 07-C-0698, 2010 WL 4005056 (E.D. Wis. Oct. 12, 2010) ("The debtor's [claim] objection in this case does not constitute a 'collateral action'—he has raised this objection in the same case.").

Again, the debtors' request that the court decide whether the Department's claim is entitled to priority is not foreclosed by any rule or Code provision, and the Department does not suggest otherwise. The Department argues that the confirmed plan provides that its claim is entitled to priority under §507(a)(1)(B), a confirmed chapter 13 plan can only be modified as permitted by §1329, and §1329 "does not authorize a debtor to reclassify a claim" as not entitled to priority. ECF No. 77, at 5–6. This claim-objection dispute, though, is not about whether the debtors can modify the confirmed plan; it is about whether the court can determine that the Department's claim is not entitled to priority. That request is properly made in a claim objection under Rule 3012(a)(2) asking the court to "determine . . . the amount of a claim entitled to priority under § 507". See also Fed. R. Bankr. P. 3012(b) ("A request to determine the amount of a claim entitled to priority may be made only by motion after a claim is filed *or in a claim objection*." (Emphasis added.)). Thus, contrary to the Department's contentions, §1329 has no particular bearing on the debtors' request to determine the non-priority status of its claim. Again, absent an applicable statute or rule, law of the

case and judicial-estoppel principles govern the preclusive effect of any determination that the Department's claim is entitled to priority that results from plan confirmation. See *Gentry II*, 621 B.R. at 866–69.

a

"[T]he law of the case doctrine is discretionary rather than mandatory." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 710 (7th Cir. 2016), opinion modified on reh'g, 832 F.3d 699 (7th Cir. 2016). As *Boyer* makes clear, the doctrine typically applies to require a bankruptcy court to conform rulings on later-contested matters—for example, claim adjudications—with earlier rulings unless there is "good cause" to do otherwise. *Id.* at 710–11. Even assuming that confirmation of the debtors' chapter 13 plan constitutes a "ruling" on the priority of the Department's claim, among the potential good reasons to depart from an earlier ruling is an "intervening change in the law[]". *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993); see also *Boyer*, 824 F.3d at 711 ("[A]s this rationale suggests, [the law-of-the-case doctrine] does not prohibit a court from revisiting an issue when there is a legitimate reason to do so, whether it be a change in circumstances, new evidence, or something the court overlooked earlier."); & *Choi v. Tower Research Capital LLC*, 2 F.4th 10, 21 (2d Cir. 2021) (quoting *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009)) ("Cogent and compelling reasons justifying a departure from the law of the case may include 'an intervening change in law, availability of new evidence, or "the need to correct a clear error or prevent manifest injustice."'").

When the debtors proposed and confirmed their plan the Department's assertion of priority status was supported by decisions from the District Court and this court. See *Wis. Dep't of Workforce Dev. v. Ratliff*, 390 B.R. 607, 617 (E.D. Wis. 2008) (holding that a claim "for food stamp overpayments" was entitled to priority under §507(a)(1)(B)); & *Wisconsin v. Schauer (In re Schauer)*, 391 B.R. 430, 431 (Bankr. E.D. Wis. 2008) (ruling that "child care overpayments are domestic support obligations within the meaning of

11 U.S.C. §101(14A) and thus nondischargeable pursuant to 11 U.S.C. §523(a)(5)"). Even if the Seventh Circuit's contrary decision in *Dennis* did not "change the law," because *Ratliff* and *Schauer* are not precedential, *Dennis* creates a circumstance that militates against applying law of the case to defeat the debtors' claim objection.

*Dennis*'s holding entails that the Department's assertion of priority is incorrect, and the Department makes no effort to contend otherwise. So, even if confirmation of the plan constitutes a "determination" that the claim is entitled to priority, *Dennis* renders that determination clearly erroneous, and under these circumstances, using the law-of-the-case doctrine to foreclose adjudicating whether the claim is entitled to priority threatens to work a manifest injustice—foreclosing the debtors' ability to discharge the claim after completing the plan. See *Pepper v. United States*, 562 U.S. 476, 506–07 (2011) (Law of the case "does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'" (alteration in original) (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997))); see also *Gentry II*, 621 B.R. at 867 ("[I]ntervening case law provided a basis to revisit the priority status of the State's claim."); *In re Gentry* (*Gentry I*), No. 15-20990, 2020 WL 2479662, at *4 (Bankr. E.D. Wis. May 13, 2020) ("Now that intervening, controlling caselaw means that our own 'district precedent' (*In re Ratliff*) is in error, this Court is bound to follow *In re Dennis*, and will do so here, as Mr. Gentry's case is still open."). Under these circumstances, the law-of-the-case doctrine does not require overruling the debtors' claim objection.

b

The Department does not invoke judicial estoppel by name, but it suggests application of the doctrine, asserting that confirmation of the plan depended on its claim being entitled to priority under §507(a)(1)(B) so the debtors' current arguments to the contrary are foreclosed. Judicial estoppel is inapplicable.

Judicial estoppel serves "'to protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of

the moment.'" *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (citations omitted) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982); *United States v. McCaskey*, 9 F. 3d 368, 378 (5th Cir. 1993)).

> [T]hree factors typically inform a court as to whether to apply the doctrine: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent opposition in a later proceeding would create the perception that either the first or second court was misled"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 643 (Bankr. N.D. Ill. 2019) (quoting *In re Knight-Celotex, LLC*, 695 F.3d 714, 721–22 (7th Cir. 2012)); see also *Zedner v. United States*, 547 U.S. 489, 504 (2006). Ultimately, though, "[b]ecause the rule is intended to prevent 'improper use of judicial machinery', judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire*, 532 U.S. at 750 (citations omitted) (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

The Department has not shown a convincing reason to apply judicial estoppel to foreclose the debtors' claim objection. Confirmation of the plan did not depend on an adjudication of the priority of the Department's claim under §507(a)(1)(B) because when the plan was confirmed, it appeared that no funds would be available for payments to the holders of any allowed unsecured claims, so whether the Department's claim was entitled to priority under §507(a)(1)(B) had no consequence. As explained in *Hovis*, a plan's promise to pay a claim does not warrant application of judicial estoppel unless the plan's treatment of the claim was litigated in connection with confirmation or confirmation depended on the accuracy of that treatment:

> If confirmation of the plan depended on [a] . . . claim being *correct*, then judicial estoppel might block a post-confirmation effort to deny the claim's

validity. . . . Yet the parties did not debate the accuracy of the . . . claim at the confirmation hearing (so Hovis did not prevail on any theory about the claim's value), and a plan promising to pay all valid claims need not imply that any given claim *is* valid to the full extent of the creditor's demand.

356 F.3d at 823. Here, the parties did not debate the priority of the claim before confirmation, and confirmation clearly did not depend on the Department's claim being entitled to priority. What is more, the Department, which concedes that its claim is *not* entitled to priority under §507(a)(1)(B), is not well positioned to argue that the debtors stand to gain an *unfair* advantage from such a determination. The debtors are therefore not judicially estopped from objecting to the Department's assertion of priority.

### III

For the foregoing reasons, IT IS ORDERED that:

1. The debtors' claim objection is sustained, and the Department's claim is determined to *not* be entitled to priority under §507 in any amount.

2. Unless following this determination the trustee withdraws her objection to the debtors' pending request to modify the plan, the trustee must file, by no later than **October 12, 2021**, a brief that explains, in detail, all remaining bases for her objection to the modification; the debtors must file a response brief by no later than **October 28, 2021**.

#####

**Exhibit C**

November 3, 2021 decision and order granting request to modify confirmed plan

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:

Antonio Terrell and                          Case No. 18-28674-gmh
Angel Marie Terrell,                              Chapter 13

     Debtors.

---

**DECISION AND ORDER GRANTING
REQUEST TO MODIFY CONFIRMED PLAN**

---

On the same day they filed their bankruptcy case the debtors filed a chapter 13 plan using this district's mandatory plan form. The plan obligated the debtors to pay the trustee for five years to fund the plan's distributions to creditors holding claims secured by their cars, holders of priority tax and child support debt that the plan paid in full, and administrative expenses. Their plan named the Wisconsin Department of Children and Families as a creditor in §4.5, a section of the model plan designed for listing domestic support obligations owed to governmental entities—claims the Bankruptcy Code affords priority in 11 U.S.C. §507(a)(1)(B). (All subsequent references to statutory sections are to the Bankruptcy Code, title 11 of the United States Code, unless otherwise specified.)

The Department filed a proof of claim stating that the debtors owed it more than $29,000 for benefit overpayments and asserting that the claim was entitled to priority under §507(a)(1)(B). The Department's assertion of priority was contradicted by *In re Dennis*'s holding that benefit overpayments are *not* domestic support obligations entitled to priority under §507(a)(1)(B). 927 F.3d 1015, 1017–18 (7th Cir. 2019). Applying *Dennis* this court sustained the debtors' objection to the Department's claim and

declared that no amount of the claim is entitled to priority. *In re Terrell*, Case No. 18-28674-gmh, 2021 WL 4304839 (Bankr. E.D. Wis. Sept. 21, 2021).

The debtors' success in obtaining a determination that the Department's claim is not entitled to priority underpins the contested matter at issue here—the Department's objection to the debtors' request to modify their plan under §1329(a) to reduce the length of time they must pay the trustee from five years to three. This shortened period is sufficient to fund all distributions required by the plan, except any amount owed to the Department, because the debtors previously surrendered collateral and reduced the plan's distributions to secured creditors.

The Department alone objects to the debtors' proposed plan modification. The Department contends that the confirmed plan commits the debtors to providing for its claim as one entitled to priority under §507(a)(1)(B). As a result, the Department argues, the debtors cannot shorten the plan term because they do not propose to pay the Department's claim in full and §1322(a)(4), made applicable to requests to modify the plan by §1329(b), requires that "the plan provide[] that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." §1322(a)(4). The Department insists it must be treated as holding a claim entitled to §507(a)(1)(B) priority—regardless of *Dennis* and the September 21, 2021 decision and order ruling to the contrary—because the language of the confirmed plan commits the debtors to that treatment.

As this decision will explain, §1329(a) authorizes the debtors to modify the plan to shorten the plan term and reduce plan payments, and neither the Bankruptcy Code nor the preclusive effect of the confirmed plan prevents them from doing so.

I

The original confirmed plan provided that the debtors would pay the trustee an amount approximately equal to their net disposable income for five years (stated in the

plan as 60 months), and those payments were about equal to the amount the plan provided to pay creditors who held claims secured by the debtors' vehicles, administrative expenses, and priority claims for taxes and child support. See ECF Nos. 2, 42, 43 & 45.

Given that the debtors' net disposable income was roughly equivalent to their payments to the trustee to fund plan distributions to these other creditors, the debtors' plan could not feasibly promise full payment of the Department's claim. Both the plan and the Department's proof of claim presumed that the claim was entitled to priority under §507(a)(1)(B), consistent with previous decisions of the district court and this court. The debtors listed the claim in §4.5, the part of the model plan that gives effect to Bankruptcy Code §1322(a)'s requirement that a chapter 13 plan either (1) pay a claim entitled to priority under §507(a)(1)(B) in full or (2) pay "all of the debtor's projected disposable income" in a five-year plan, even if, like the debtors in this case, the Code would otherwise limit the plan term to three years.[1] §1322(a)(4); see also §1322(a)(2).

The debtors now request to modify their confirmed chapter 13 plan under §1329 to shorten the plan term to three years. Before the court sustained the debtors' objection to the Department's claim, the trustee objected to the debtors' request to modify the plan, principally citing §1322(a)(4) (made applicable to requests to modify the plan by §1329(b)) and stating, "the debtors must provide all projected disposable income for a 5-year period as the debtors have a section 507(a)(1)(B) claim that will not be paid in full." ECF No. 72, at 1. After the court ruled that the Department's claim is not entitled to

---

[1] The debtors reported current monthly income that when multiplied by 12 was below the median family income for a family of their size in Wisconsin. See ECF No. 1, at 79–81 (containing the debtors' responses to Official Form 122C-1 "Chapter 13 Statement of [] Current Monthly Income and Calculation of Commitment Period"). As a result, §1322(d)(2) limited the length of their chapter 13 plan to three years, "unless the court, for cause, approve[d] a longer period" not to exceed five years. §1322(d)(2). The debtors' original proposal that the plan fund distributions to pay the claims secured by their vehicles afforded cause to confirm their five-year plan, and §1322(a)(4) would have required a five-year plan if the Department's claim was entitled to priority under §507(a)(1)(B), as asserted by the Department's proof of claim and as listed in the plan.

priority, the trustee withdrew her objection to plan modification. ECF No. 103. The Department, which did not timely object to the debtors' request to modify the plan, seeks to continue the trustee's objection, and, under the circumstances, the court permits the Department to stand in the trustee's shoes.[2]

II

A

The Department principally argues that the court's determination that its claim is not entitled to priority has no impact on the debtors' request to modify the confirmed plan. The Department contends that (1) the confirmed plan, which §1327(a) makes binding on the debtors, established that the Department's claim is one entitled to priority under §507(a)(1)(B), and (2) §1329 does not authorize the debtors to "reclassify" the claim; thus, (3) §§1322(a)(4) and 1329(b) prevent the debtors from modifying the plan to shorten the plan term. The linchpin in this argument is that because the debtors listed the Department in §4.5 of the plan form, which states that creditors listed there have an "allowed priority claim[] . . . based on a domestic support obligation that is owed or assigned to a governmental unit as provided by 11 U.S.C. § 507(a)(1)(B)", the confirmed plan precludes any later determination of the amount, if any, to which the Department's claim is entitled to priority under §507(a)(1)(B). ECF No. 2, at 5.

---

[2] The debtors filed a motion to strike the Department's late-filed objection to the debtors' request to modify their plan. ECF No. 109. As noted at the November 1, 2021 hearing, the Department's responses to the debtors' objection to its claim presented the essence of its opposition to plan modification. For this reason and because the trustee had previously objected to modification at least in part for reasons akin to those argued by the Department, no unfair prejudice to the debtors results from letting the Department continue the opposition to plan modification that the trustee has abandoned. In addition, the Bankruptcy Code might be read to impose an obligation on the court to ensure that a non-consensual proposal to modify the plan conforms to the provisions of §1325(a) made applicable by §1329(b). See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) ("[T]he Code makes plain that bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements of §§ 1328(a)(2) and 523(a)(8)."). Under these circumstances, adjudicating this controversy after considering the Department's arguments on their merits, rather than ruling that the Department forfeited or waived those arguments, better serves the fair and just administration of this contested matter. For these reasons, this decision and order denies the debtors' motion to strike.

The Department's construction of the plan's formulaic text is incorrect. As this decision will explain, the confirmed plan does not establish that the Department's claim is irrefutably entitled to priority in the amount stated in its proof of claim, and it does not foreclose a party in interest from requesting after plan confirmation that the court determine the extent to which the claim is entitled to priority.

1

Before turning to plan construction, a point of necessary clarification on the difference between claim allowance and priority. The Department's objection to plan modification repeatedly contends that confirmation of the debtors' plan provided the Department with "an allowed priority claim". See, e.g., ECF No. 107, at 3–4, & 6–7. But neither the debtors' confirmed plan nor their proposed modification determines the allowed nature of the Department's claim or the amount of the claim that is entitled to priority.

Allowance and priority both affect whether and how a chapter 13 plan must provide for a claim. See, e.g., §§1322(a)(2) (plan's payment of priority claims), 1325(a)(4) (amount plan must pay to holders of allowed unsecured claims), 1325(a)(5) (plan's treatment of allowed secured claims), and Fed. R. Bankr. P. 3021 (providing that "after a plan is confirmed, distribution shall be made to creditors whose claims have been allowed"). But the concepts are distinct—claim "[a]llowance", as the Seventh Circuit has observed, "has nothing to do with priority", *In re Altheimer & Gray*, 601 F.3d 740, 741 (7th Cir. 2010)—and they are governed by different Bankruptcy Code sections and Bankruptcy Rules.

Allowance of claims is governed by §502 of the Bankruptcy Code and various rules that, read together, provide as follows: A proof of claim must be filed for the claim to be allowed (except in certain circumstances that do not apply here). Fed. R. Bankr. P. 3002(a). If a proof of claim is filed, then the claim "is deemed allowed" unless someone objects. §502(a). A properly executed and filed proof of claim is "prima facie evidence of

the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). And "[a]n objection to the allowance of a claim", Fed. R. Bankr. P. 3007(a)(1), obligates the court to "determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition" and then "allow such claim in such amount, except to the extent that" one or more bases for disallowing the claim apply, §502(b).

Priority, on the other hand, is governed by §507, and requests to determine "the amount of a claim entitled to priority under § 507" are governed by Rule 3012. Fed. R. Bankr. P. 3012(a)(2). Rule 3012 provides that such a request may "be made . . . by motion after a claim is filed" or "may be made . . . in a claim objection", Fed. R. Bankr. P. 3012(b), as the debtors did here. Rule 3012 also governs a debtor's "request to determine the amount of a secured claim" and such request may also be made in a claim objection. Fed. R. Bankr. P. 3012(b). The rules thus contemplate two types of claim objections, those requesting that the court disallow a claim (in whole or in part) and those requesting that the court determine the extent to which an allowed claim is entitled to priority or the extent to which it is secured (in whole or in part). The debtors elected to make their request for a determination of the amount of the claim entitled to *priority* in a claim objection, as permitted by Rule 3012(b), but that claim objection did not implicate *allowance* of the claim.

The Department holds an allowed claim because it filed a timely proof of claim, and no one has sought disallowance of it under §502(b) or otherwise objected to its validity or amount. The court sustained the debtors' objection to the Department's assertion of priority, however, and ruled that no amount of that claim is entitled to priority. Thus, the Department holds an allowed unsecured claim, no amount of which is entitled to priority. Again, this process of claim adjudication—the process by which a bankruptcy court determines the extent to which claims are allowed or entitled to priority—is distinct from the process of determining whether a chapter 13 plan provides for claims in a manner consistent with chapter 13's plan formation and

confirmation requirements.

2

As noted above, the Department's objection to plan modification primarily argues that the confirmed plan expressly provides that its claim is entitled to priority under §507(a)(1)(B), so that issue was necessarily determined by the confirmation order, even if the parties did not actually litigate it, and that determination, rather than the court's later ruling that the claim is *not* entitled to priority, entails that the debtors cannot shorten the plan term because §1322(a)(4), made applicable by §1329(b), prohibits it. The Department's argument thus depends entirely on reading the plan to determine conclusively that the Department's claim is entitled to priority under §507(a)(1)(B).

a

The law governing the interpretation of a confirmed chapter 13 plan is surprisingly unsettled. In responding to the debtors' claim objection, the Department, quoting *In re Harvey*, 213 F.3d 318 (7th Cir. 2000), suggested that a confirmed plan is treated as a contract and interpreted under state law. ECF No. 85, at 2. But the Department's chosen quote was from *Harvey*'s summation of the bankruptcy court's underlying decision, not the holding of that case. See 213 F.3d at 320. *Harvey* goes on to openly criticize that approach to interpreting the plan, suggesting that the better approach may be "something analogous to the four-corners principle that applies to federal consent decrees", before determining that "the parties ha[d] not made an issue of this point . . . [and the court did not] think that the application of the four-corners principle or some other federal rule would make a difference to the outcome" and so it left "further exploration of this problem to another day." *Id.* at 321–22.

The Seventh Circuit's caselaw on this issue is not easily reconciled. *Harvey*'s criticism of the bankruptcy court's approach is at odds with other Seventh Circuit cases reasoning that "[p]rinciples of contract law apply to interpreting a plan of

reorganization: 'A confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations.'" *FCC v. Airadigm Commc'ns, Inc. (In re Airadigm Commc'ns, Inc.)*, 616 F.3d 642, 664 (7th Cir. 2010) (quoting *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002)). Still, several other Seventh Circuit cases hold that "[a] bankruptcy court's interpretation of a plan it confirmed is . . . an interpretation" not of a contract but "*of its own order*" that "is subject to full deference . . . and may be overturned only if the record shows an abuse of discretion in the interpretation." *Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.)*, 547 F.3d 763, 768 (7th Cir. 2008) (emphasis added) (citing *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994)); see also *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 n.4 (2009) ("Numerous Courts of Appeals have held that a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference.").

As *Harvey* suggests, state contract law is an odd lens through which to interpret a court-confirmed plan under chapter 13 of the Bankruptcy Code. Even if one can overlook interjecting the varieties of state law into the construction of plans confirmed under a federal statute founded on Congress's power to enact "uniform Laws on the subject of Bankruptcies throughout the United States" (U.S. Const. Art. I, §8, cl. 4), contract law's interpretive goals do not all easily fit the task of interpreting chapter 13 plans. A central aim of Wisconsin contract law, for example, is to "interpret[] contracts that were freely entered into" by "determin[ing] and giv[ing] effect to the parties' intention" because "Wisconsin public policy favors freedom of contract", which "is based on the idea that individuals should have the power to govern their own affairs without interference." *Solowicz v. Forward Geneva Nat., LLC*, 780 N.W.2d 111, 124 (Wis. 2010) (quoting *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 607 N.W.2d 276, 282 (Wis. 2000) (citing *Gorton v. Hostak, Henzl & Bichler, S.C.*, 577 N.W.2d 617, 622–623 (Wis. 1998))). A confirmed chapter 13 plan is hardly the result of empowering individuals to govern their own affairs without interference. To the contrary, a chapter 13 plan, which

may only be filed by the debtor, see §1321, can "modify the rights" of most creditors under contracts that were freely entered into before the debtor commenced a bankruptcy case. See §1322(b)(2), (b)(5) & (c); *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329–30 (1993). And confirmation of a chapter 13 plan, which must be by court order, makes the plan's terms binding on all creditors, including those whose rights the plan modifies, even if "such creditor[s] . . . objected to . . . or . . . rejected the plan." §1327(a). It makes little sense, broadly speaking, to transplant state contract law—designed to determine and give effect to the intentions of freely bargaining parties—for use in interpreting a confirmed chapter 13 plan, which commonly results from a deliberate effort by one party to upset those very intentions, approved by a federal court through a process codified by Congress and overseen by a trustee designated by the United States Department of Justice.

Of course, as some cases suggest, various *principles* of contract law may reasonably guide a court in interpreting a bankruptcy plan. For instance, the following rules of contract law seem congruent with a sensible approach to construing a plan: Contracts are ordinarily construed "as they are written", "according to [their] plain or ordinary meaning, consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" *Tufail v. Midwest Hosp., LLC*, 833 N.W.2d 586, 592 (Wis. 2013) (citation omitted) (quoting *Columbia Propane, L.P. v. Wis. Gas Co.*, 661 N.W.2d 776, 783 (Wis. 2003); *Seitzinger v. Cmty. Health Network*, 676 N.W.2d 426, 433 (Wis. 2004)) (citing *Huml v. Vlazny*, 716 N.W.2d 807, 820 (Wis. 2006)). "Where the terms of a contract are clear and unambiguous," it is "construe[d] . . . according to its literal terms." *Id.* (citing *Maryland Arms Ltd. P'ship v. Connell*, 786 N.W.2d 15, 20–21 (Wis. 2010)). But "[i]f the terms of the contract are ambiguous", meaning they are "fairly susceptible of more than one construction", then "evidence extrinsic to the contract itself may be used". *Id.* (quoting *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 75 (Wis. 1996)) (citing *Seitzinger*, 676 N.W.2d at 433).

The "four-corners principle" mentioned in *Harvey* as governing the interpretation of consent decrees also suggests that a court construing a writing (like a confirmed chapter 13 plan) should first focus on the text. "[A]ny command of a consent decree or order must be found 'within its four corners'". *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 233 (1975) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)). Or, more simply, like a contract, "the instrument must be construed as it is written". *Armour & Co.*, 402 U.S. at 682. In fact, because "[c]onsent decrees and orders have attributes both of contracts and of judicial decrees", courts interpreting consent decrees may rely on "certain aids to construction" that normally apply to contracts—including "the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree"—without "depart[ing] from the 'four corners' rule". *ITT Cont'l Baking*, 420 U.S. at 236 n.10, 238.

Consent decrees, however, are typically more like contracts than are chapter 13 plans. "Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms", and they embody "as much of [the parties'] opposing purposes as [they] have the bargaining power and skill to achieve." *Armour & Co.*, 402 U.S. at 681–82. Debtors and creditors may negotiate certain terms of a chapter 13 plan, but unless the negotiated provisions are permissible and the other requirements for confirmation are satisfied, the plan may not be confirmed (and thus the negotiated terms will not be binding). And while creditors may seek to persuade debtors to offer favorable plan terms, ultimately only a debtor may file a chapter 13 plan, §1321, and its confirmation may not require and often will not depend on creditor acceptance, §1325. Accordingly, the construction aids that a court may employ to construe a consent decree are arguably less applicable when construing a confirmed plan.

The upshot of all this seems to be that, in construing a confirmed chapter 13 plan,

a court ordinarily ought to focus on the plan as written, give its terms their plain or ordinary meaning based on what a reasonable person in the appropriate community of bankruptcy practitioners would have understood them to mean under the relevant circumstances, and turn to extrinsic evidence or other aids to construction only to the extent necessary to discern that meaning or to resolve genuine ambiguities in the text. These principles inform the court's interpretation of the confirmed plan in this case, which this decision now undertakes mindful that this "court is in the best position to interpret its own orders." *Tex. N.W. Ry. Co. v. Atchison, Topeka & Santa Fe Ry. Co. (In re Chi., Rock Island & Pac. R.R. Co.)*, 860 F.2d 267, 272 (7th Cir. 1988); see also *Matter of Weber*, 25 F.3d 413, 416 (7th Cir. 1994) (Stating in a chapter 12 case that "[i]n reviewing a bankruptcy court's interpretation of a confirmed plan, then, the reviewing court should extend to that interpretation the same deference that is otherwise paid to a court's interpretation of its own order.").

b

The plan lists the Department as having a claim entitled to priority under §507(a)(1)(B) and in that way provides for the Department's claim as a priority claim. At the center of the parties' dispute over the propriety of the debtors' request to modify the plan is the following question: In providing for the Department's claim as an "allowed priority" claim, did the plan (1) conclusively determine that the claim *is* one entitled to priority under §507(a)(1)(B) or (2) provide for payment of that claim *to the extent that* it is entitled to priority, as may be subsequently determined after a request made by motion or claim objection? The answer to that question depends on how one reads §4.5 of the plan—text required by this district's mandatory model plan form—as informed by the Bankruptcy Code and its implementing rules. See Fed. R. Bankr. P. 3015(c) & 3015.1; see also Bankr. E.D. Wis. L.R. 3015(a).

The text of §4.5 of the plan provides in relevant part as follows:

The allowed priority claims listed below are based on a domestic support obligation that is owed or assigned to a governmental unit as provided by 11 U.S.C. § 507(a)(1)(B) and will be paid less than the full amount of the claim under 11 U.S.C. § 1322(a)(4). If the *Available funds to creditors in Parts 3 and 4* box is selected, then there should be no distribution to nonpriority unsecured creditors in Part 5 until or unless the § 507(a)(1)(B) claim is paid in full. *This plan provision requires that payments in § 2.1 be for a term of 60 months*; see 11 U.S.C. § 1322(a)(4).

| Name of Creditor | Amount of claim to be paid |
|---|---|
| | ☑ Available funds after creditors in Parts 3 and 4 are paid |
| Department of Children and Families | ☐ $ ___ |
| | ☐ Percent of claim ___% |

ECF No. 2, at 5. This text must be construed in the context of the model plan's structure and the Code provisions to which it expressly refers because, among other reasons, conformity with the applicable provisions of the Bankruptcy Code is a plan-confirmation requirement. See 11 U.S.C. §1325(a)(1); see also *Matter of Cherry*, 963 F.3d 717, 719 (7th Cir. 2020).

On its face §4.5 is ambiguous, an ambiguity made more apparent by the model plan's structure and the Code provisions that inform that structure. Section 4.5 of the debtors' plan can be plausibly construed to provide that the Department's claim will **not** be paid in full, but will instead be treated under §4.5, *to the extent* that the Department has a claim that is both generally an "allowed claim" entitled to priority for purposes of §4.1 and specifically a claim entitled to priority under §507(a)(1)(B). The Department's arguments require a different construction—that §4.5 of the plan establishes conclusively that its claim is both an allowed claim and a claim entitled to priority under §507(a)(1)(B) in its full amount (so confirmation of the plan makes later litigation of allowance or priority irrelevant).

Based on the text alone, the Department's reading is plausible. But the Department's proposed reading is less tenable than the competing construction, which leaves open later adjudication of the extent to which the claim may be allowed or entitled to priority, in part because the Department's reading risks or results in administrative and procedural conflicts that the competing construction does not. Under the Department's reading of the plan, plan confirmation determines that the Department has an allowed claim entitled to priority in an indeterminate amount (because the plan does not state the amount of the claim, the amount entitled to priority, or the amount to be paid to the Department on the claim). See ECF No. 2, at 4–5. Under the Department's interpretation of the plan, if the Department had not filed a proof of claim (and no one filed one on its behalf), the trustee would not be authorized to pay the Department's claim, notwithstanding the language in the plan "allowing" that claim, because the plan requires a timely filed proof of claim for payment. ECF No. 2, at 1. But, also under the Department's interpretation, the trustee could not have paid any funds to holders of nonpriority unsecured claims, because §4.5 of the plan would prohibit such payments by providing that "there should be no distribution to nonpriority unsecured creditors in Part 5 until or unless the § 507(a)(1)(B) claim is paid in full." ECF No. 2, at 5.

The Department's proposed construction of §4.5 would also make it (and §4.5 of the district's model plan form on which it is based) inconsistent with Rule 3002(a), which requires that, subject to certain exceptions that do not apply here, a creditor "must file a proof of claim . . . for the claim . . . to be allowed". As the court's September 21 decision and order explains, the Code and its enabling rules establish a structure in which the court will often be required to confirm a chapter 13 plan well before the deadline for governmental entities to file proofs of claim alleging priority under §507. *Terrell*, 2021 WL 4304839, at *3–4 (citing §§301(b), 502(b)(9)(A), 1322(a)(2), & 1324(b) and Fed. R. Bankr. P. 2003(a), 3002(c), & 3012(b)). Interpreting §4.5's reference to "allowed

priority claims" as contemplating that the listed creditor will file a proof of claim that is subject to later objections to contest the extent to which that claim may be allowed or entitled to priority—rather than as entitling the creditor to an allowed priority claim of an unknown amount, even if it files no proof of claim—sensibly avoids any conflict with Rule 3002(a).

Most important, the plan, as the Department would construe it, necessarily conflicts with Rule 3012(b). Under the Department's construction, §4.5 of the plan determines that the Department has a claim entitled to priority under §507(a)(1)(B) in "[t]he priority debt amount[] listed on [the] filed proof of claim". See ECF No. 2, at 4 ("The priority debt amounts listed on a filed proof of claim control over any contrary amounts listed in this section."). The Department's construction of the plan would deem proofs of claim filed by creditors listed in §4.5 of the plan to be both "allowed" and entitled to priority in whatever amount alleged, and no one, including unsecured creditors who will not receive a plan distribution until all claims entitled to priority are paid, would be able to contest those claims. This outcome is both counterintuitive and inconsistent with Rule 3012(b). Rule 3012(b) provides that "[a] request to determine the amount of a claim entitled to priority may be made *only by motion after a claim is filed or in a claim objection*." (Emphasis added.) The rule's limitation on how one may seek to determine the extent of a claim's entitlement to priority—a limitation that excludes using plan text—is underscored by the Rule's immediately preceding provision that, with respect to claims filed by nongovernmental entities, "a request to determine the amount of a secured claim may be made by motion, in a claim objection, *or in a plan* filed in a chapter 12 or chapter 13 case." Fed. R. Bankr. P. 3012(b) (emphasis added). Again, the debtors' plan is more plausibly read to permit parties to request a determination of the extent to which a claim is entitled to priority in the manner provided by Rule 3012(b) even after plan confirmation, rather than, as the Department would read it, to determine conclusively the amount of the claim entitled to priority

based on the confirmed plan's listing of the Department as holding an "allowed priority" claim and an implicit reference to the Department's later-filed proof of claim—a procedure that Rule 3012(b) explicitly does *not* authorize and implicitly forbids.

These flaws in the Department's proposed construction of the plan garner greater interpretive weight because the relevant language of §4.5 is found in the district's mandatory local chapter 13 plan and is similar to language in the national Official Form, which "must be used" wherever a Local Form has not been adopted. Fed. R. Bankr. P. 3015(c); see Fed. R. Bankr. P.3015.1; see also Bankr. E.D. Wis. L.R. 3015(a) (requiring chapter 13 debtors to use the local model plan form). The district's model chapter 13 plan was adopted after public notice and opportunity for comment, as authorized by Rule 3015.1. See Fed. R. Bankr. P. 3015.1(a) & Bankr. E.D. Wis. L.R. 3015(a). And local forms, like local rules, must be consistent with the Federal Rules of Bankruptcy Procedure. See Fed. R. Bankr. P. 9029(a). So, while a chapter 13 plan drafted from scratch by a debtor could be plausibly construed to result in (or risk) the kinds of administrative issues and procedural violations the Department's construction entails, a plan conforming to mandatory form language cannot reasonably be so construed.

For these reasons, the confirmed plan as written—accorded its plain meaning, consistent with how a reasonable person in the community of bankruptcy practitioners would best understand its terms under the circumstances, including the circumstances under which its operative language was drafted and employed—does **not** provide that the Department *has* an allowed claim entitled to priority under §507(a)(1)(B), but instead provides that the Department's claim will be paid as a priority claim in the manner permitted by §1322(a)(4) *to the extent* that the claim is entitled to priority under §507(a)(1)(B). And, as the September 21 decision and order determined, no amount of the Department's claim is entitled to priority under that section.

B

This construction of the plan reveals the error in the centerpiece of the

Department's objection to the debtors' request to modify the plan—that confirmation of the debtors' plan conclusively determined that the Department's claim is entitled to §507(a)(1)(B) priority. Although the plan provides that "[t]he priority debt amounts listed on a filed proof of claim control", for the reasons already explained, the claim amounts entitled to priority remain open to determination through motion or claim objection, as Rule 3012(b) requires. Because the court has determined in accordance with Rule 3012(b) that no amount of the Department's claim is entitled to priority, nothing prevents the debtors from using §1329(a)'s authority to reduce the plan commitment period to three years.

The Department correctly observes that §1329 "provides only a few 'limited' ways a debtor can modify that plan." ECF No. 107, at 4 (quoting *Matter of Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994)). Section 1329(a) authorizes debtors, trustees, and holders of allowed unsecured claims to modify confirmed chapter 13 plans to, among other things, alter the plan's commitment period or the amount paid to classes of creditors. That section provides that "the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan" or "(2) extend or reduce the time for such payments". §1329(a)(1) & (2).

The requested plan modification reduces the time during which the debtors must make payments under the plan from 60 months to 36 months. ECF No. 67, at 2. The modification also reduces payments on unsecured claims by decreasing the amount of the debtors' periodic payments to the trustee to around $251 per month for the last 12 months of the plan.[3] *Id.* And the modification increases payments on administrative

---

[3] The debtors had previously modified their plan to require monthly payments of about $323 to the trustee, reduced from about $750 per month in the original plan, after surrendering a claim-securing vehicle and reducing the plan's payments to that creditor. This earlier post-confirmation modification reduced the total amount of payments under the plan from approximately $45,000 to about $25,000. ECF No. 47 at 2; ECF No. 2, at 1–2.

expenses (attorney's fees) by $300 to compensate counsel for filing the modification request. *Id.*

The proposed modified plan's reduction in the time for the debtors to make payments under the plan from five years (originally 60 months from plan confirmation) to three years (ending September 2021, which is 36 months from the debtors' first payment to the trustee) corresponds with one of the modifications authorized by §1329(a)(2) (allowing post-confirmation modifications to "extend or reduce the time for" "payments under such plan"). And because §1329(a)(1) permits modification of the plan to "increase or reduce the amount of payments on claims of a particular class provided for by the plan", the reduction in payment to holders of unsecured claims and increase in payment to cover the additional administrative expense of filing the request to modify the plan also fit within the categories of plan modifications authorized by §1329(a).

Restrictions on modifying a chapter 13 plan after confirmation are contained in §1329's other subsections. Of relevance here, §1329(b) makes many of §1322's limitations on plan construction and §1325(a)'s limitations on plan confirmation applicable to post-confirmation modifications. §1329(b)(1) ("Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.").

The modified plan's term and claim-payment provisions comply with the Code sections made applicable by §1329(b) and with §1329's other limitations. The plan as modified has paid all remaining secured claims, administrative expenses, and claims entitled to priority under §507(a)(1)(A), as required by §1329(b)'s incorporation of §§1322(a) & (b) and 1325(a). The proposed plan modification shortens the plan term to three years, but the applicable statutory provisions do not require a longer term under these circumstances, now that the Department's claim has been determined not to be a §507(a)(1)(B) priority claim requiring a five-year plan term in the absence of full

payment.

The Department's objection does not contest any of this directly. It instead characterizes the proposed plan modification as reclassifying its claim and argues that claim reclassification is not authorized because it is not among the grounds for modification listed in §1329(a). ECF No. 107, at 4. While it is correct that claim "reclassification" is not found in §1329(a), it is also irrelevant. The debtors' plan modification does not "reclassify" the Department's claim. Again, the debtors' plan modification reduces the time that they must pay the trustee to make distributions to creditors, reduces the amount paid unsecured creditors by reducing the debtors' trustee payments, and increases slightly payments on administrative expenses. That's it. And, as explained above, §1329(a) allows for each of these modifications. See §1329(a)(1) & (2). True, the plan as modified still lists the Department in §4.5's subsection for (potentially) allowed priority claims, but, as also explained above, that listing makes no difference here because the court has determined that no amount of the Department's claim is entitled to priority under §507(a)(1)(B). There is no less-than-fully-paid claim entitled to priority that triggers §1322(a)(4)'s five-year term requirement. As a result, the debtors may modify the plan to reduce their payment term to three years without running afoul of §1329(b)'s incorporation of §1322(a)(4), which *would* require the debtors to make plan payments for five years, *if* the Department's claim *were* entitled to priority under §507(a)(1)(B).[4]

---

[4] Because the plan modification does not "reclassify" the Department's claim, the decisions the Department cites for the proposition that §1329(a) does not authorize a plan modification to "reclassify" claims have no bearing. See *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 533 (6th Cir. 2000); *In re Moncree*, 511 B.R. 922, 925 (Bankr. E.D. Wis. 2014); *In re Smith*, 259 B.R. 323, 326 (Bankr. S.D. Ill. 2001); and *In re Meeks*, 237 B.R. 856, 860 (Bankr. M.D. Fla. 1999). Rule 3012(b) requires a debtor to file a motion or a claim objection to contest a proof of claim's assertion of priority—to request "reclassification," as the Department would label it, or, more accurately, to request a determination of whether or to what extent the claim actually is entitled to priority. As explained above, the debtors filed such a claim objection. The Department opposed the objection solely on preclusion grounds. The court ruled that plan confirmation did not preclude the claim objection and no amount of the Department's claim is entitled to priority.

The Department would have the court reject this syllogism based on its insistence that plan confirmation vested its claim with priority status—a status made binding on the debtor in the issue preclusion sense by §1327(a), which states, "[t]he provisions of a confirmed plan bind the debtor and each creditor". But, as the September 21 decision and order explains, the extent to which an order confirming a plan is binding under §1327(a) is governed by law-of-the-case principles and judicial estoppel. See *Terrell*, 2021 WL 4304839, at *5. That is the teaching of *In re Hovis*, which states in explicating the preclusive effect of a confirmed chapter 11 plan, "issue preclusion has no role within a unitary, ongoing proceeding. . . . What matter within a single suit are the deadlines set by statute and rule, plus the law of the case and judicial estoppel."[5] 356 F.3d 820, 822 (7th Cir. 2004); see also *Gentry*, 621 B.R. at 866–69 (applying

_____

Therefore, no claim entitled to §507(a)(1)(B) priority is provided for by the plan that would require a modification under §1329(a) to have a five-year term due to §1329(b)'s incorporation of §1322(a)(4).

The Department also urges the court to follow *In re Gentry,* 621 B.R. 863 (Bankr. E.D. Wis. 2020), contending that *Gentry* addresses circumstances that are "nearly identical" to this case because the court there similarly sustained the debtor's claim objection to the Department's priority claim but then denied the debtor's request to shorten the plan term. ECF No. 107, at 5–6. *Gentry*, however, did not involve the same model plan language. And *Gentry* left open the possibility that different plan terms might lead to a different result, stating, "[t]he outcome here might have been different if the debtor's confirmed plan had read differently—if, for example, it had proposed simply to pay 'all allowed § 507(a)(1)(B) priority claims' in full (or in accordance with § 1322(a)(4))." 621 B.R. at 871. Properly construed the debtors' plan in this case effectively does no more than that. It provides that it will pay the Department's claim in accordance with §1322(a)(4) to the extent that the claim is allowed and is entitled to priority under §507(a)(1)(B). Under these circumstances, as *Gentry* contemplates, §1329 permits the debtors to modify the confirmed plan to shorten the plan term because the court has determined through Rule 3012(b)'s claim-objection process that the Department's claim is not entitled to priority under §507(a)(1)(B).

[5] That *Hovis* involves the binding effect of a confirmed chapter 11 plan does not limit its application in this chapter 13 case. Section 1141, the Bankruptcy Code provision governing the effect of confirmation of a chapter 11 plan, states, in language materially indistinguishable from §1327(a), "the provisions of a confirmed plan bind the debtor . . . and any creditor". §1141(a). Nor is the Department correct in its contention that *Hovis*'s application of law of the case and judicial estoppel resulted from the fact that the plan in that case authorized post-confirmation claim objections. *Hovis*'s discussion of the plan setting a deadline for claim objections arose in the context of whether the debtor permissibly filed the objection. The decision states, "[s]etting dates for filing of claims, and objecting to them, is within the discretion of the bankruptcy judge. . . . The bankruptcy judge initially appeared to recognize that much. The plan of reorganization he confirmed provides" a deadline for filing claim objections. *Hovis*, 356 F.3d at 822. None of this limits *Hovis*'s direction that law of the case and judicial estoppel rather than issue preclusion apply when a party seeks to revisit an issue in the context of a subsequent proceeding in the same case. What is

*Hovis* in a chapter 13 case).

The debtors' claim objection in this case initiated a contested matter "within a unitary, ongoing" bankruptcy case akin for preclusion purposes to the claim objection in *Hovis*. *Hovis*, 356 F.3d at 822; see also Fed. R. Bankr. P. 3012(b). The debtors properly made their request to modify the plan "after confirmation of the plan but before the completion of payments under such plan," as required by §1329(a), and requested modifications allowed by §1329(a). The confirmed plan's determination that the Department's claim is entitled to priority under §507(a)(1)(B) (presumed for the sake of this discussion but shown to be incorrect above) has only the "binding" force afforded by law of the case and judicial estoppel. As the September 21 decision and order explains, those principles did not foreclose the court's adjudication of the claim objection on its merits, and, on the merits, the Department's claim is not *actually* entitled to priority under §507(a)(1)(B)—a conclusion required by *Dennis* and one that the Department has never contested in this case. See *Terrell*, 2021 WL 4304839, at *6–7. Thus, even if the Department's reading of the plan as vesting its claim with priority status were correct, the court's subsequent determination that the Department's claim is *not* entitled to priority under §507(a)(1)(B) entails that the debtor's request to shorten the plan term does not offend §1329(b)'s incorporation of §1322(a)(4)'s five-year-term requirement for plans that do not pay §507(a)(1)(B) claims in full.

### III

For these reasons, IT IS ORDERED that the debtors' motion to strike the

---

more, as discussed above, the debtors' plan also allows for the filing of post-confirmation plan objections to determine the extent to which allowed claims are entitled to priority.

The Department has additionally argued that *Hovis* is inconsistent with *Bullard v. Blue Hills Bank*, 134 S. Ct. 1686 (2015), and *Espinosa*, 559 U.S. 260. As *Gentry* explains, however, "*Hovis* is not inconsistent with either *Bullard* or *Espinosa*. In *Bullard*, the Supreme Court examined whether a particular order (an order denying confirmation of a proposed Chapter 13 plan) was 'final' and appealable for purposes of 28 U.S.C. § 158(a). And *Espinosa* concerned a creditor's challenge to a confirmed plan—brought years after the plan had been confirmed, fully performed, and the debtor discharged—on the basis that the confirmation order was void under Federal Rule of Civil Procedure Rule 60(b)(4)." *Gentry*, 621 B.R. at 867.

Department's objection to their request to modify the plan (ECF No. 109) is denied; IT IS FURTHER ORDERED that the debtors' request to modify their confirmed plan (ECF No. 67) is granted.

November 3, 2021

G. Michael Halfenger
Chief United States Bankruptcy Judge